[No. B133111. Second Dist., Div. Six. Jan. 27, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
AMERICAN SURETY INSURANCE CO., Defendant and Appellant.

## COUNSEL

Brendan Pegg for Defendant and Appellant.

James L. McBride, County Counsel, and William A. Waters, Assistant County Counsel, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—American Surety Insurance Co. (Surety) appeals from the trial court's order denying its motion to vacate forfeiture and exonerate the bail it posted for Alan Rodriguez Quintero. (Pen. Code, § 1305.)[1] The bail was forfeited when Quintero, who was deported to Mexico by federal immigration authorities, did not appear at his preliminary hearing. Surety contends the order of forfeiture should be vacated because federal immigration laws prevented Quintero's legal return to the United States, making Surety's performance of the bond impossible. We agree and reverse. "The law never requires impossibilities." (Civ. Code, § 3531.) Notions of fairness, common sense, and the rule requiring us to construe the statutory scheme against

[1] All undesignated statutory references are to the Penal Code.

forfeiture (see, e.g., *People v. Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385]), compel this result.

*Facts*

Quintero was arrested for a drug-related offense on June 26, 1998. Surety posted a $20,000 bail bond for him the same day, after Quintero presented a California driver's license, Social Security card and a resident alien registration card. On August 5, 1998, Quintero appeared for arraignment and was ordered to return for his preliminary hearing on September 6, 1998. He did not do so because he was deported to Mexico on August 10, 1998. Surety's bond was then ordered forfeited.

The Immigration and Naturalization Service (INS) had previously ordered Quintero deported in January 1998, because he was convicted of a felony relating to the sale of cocaine in January 1997.

*Detention by Operation of Federal Law*

█ Section 1305, subdivision (d) provides that an order of forfeiture shall be vacated and bail exonerated if the following conditions are met: "(1) The defendant is deceased or otherwise permanently unable to appear in the court due to illness, insanity, or detention by military or civil authorities. [¶] (2) The absence of the defendant is without the connivance of the bail."[2] Because he has been convicted of a drug offense, Surety meritoriously contends that Quintero is "detained" in Mexico by operation of federal law that permanently bars his return to the United States. (8 U.S.C.A. § 1182(a)(2)(A)(i)(II).)[3]

A person may be "detained" within the meaning of section 1305, subdivision (d), without being in the actual physical custody of civil authorities. "It is sufficient under this section . . . if it is proven that the defendant was restrained by civil authorities and that the restraint prevents his appearance on the date set for that appearance. [Citation.]" (*People v. United Bonding Ins. Co.* (1970) 12 Cal.App.3d 349, 352-353 [90 Cal.Rptr. 714].)

---

[2]As the court noted in *People v. Pugh* (1970) 9 Cal.App.3d 241, 248 [88 Cal.Rptr. 110], this statute creates an exception to the common law rule which required forfeiture if, "after the instrument is executed, the principal is imprisoned in another state for the violation of a criminal law of that state . . . ." (*Taylor v. Taintor* (1872) 83 U.S. (16 Wall.) 366, 371 [21 L.Ed. 287, 290].)

[3]Title 8 United States Code section 1182 lists classes of aliens who are, "ineligible to receive visas and ineligible to be admitted to the United States." (8 U.S.C.A. § 1182(a).) One such class of aliens is, "any alien convicted of . . . [¶] . . . [¶] (II) a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21) . . . ." (8 U.S.C.A. § 1182(a)(2)(A)(i)(II).)

For example, in *United Bonding Ins. Co.,* the defendant posted bail and left California for his native Mexico. There, he was charged with a felony and Mexican civil authorities ordered that his movements be "restricted to an area within 50 miles of the town of Magdalena . . . ." (12 Cal.App.3d at p. 352.) A California bail bondsman brought the defendant to the United States border where a local magistrate used the travel restriction as a basis for refusing entry to the defendant. (*Ibid.*) Under these circumstances, the Court of Appeal held that the defendant was detained in Mexico and that section 1305 required the order of forfeiture be vacated.

By contrast, the defendant in *County of Los Angeles v. Maga* (1929) 97 Cal.App. 688 [276 P. 352], voluntarily left the United States while she was on bail and after a deportation order was issued. Federal authorities did not take the defendant into custody or otherwise enforce the deportation order. The Court of Appeal held the defendant's bond forfeited because she "voluntarily left the jurisdiction." (*Id.* at p. 691.)

Similarly, in *County of Los Angeles v. Ranger Ins. Co.* (1996) 48 Cal.App.4th 992 [56 Cal.Rptr.2d 25], the defendant, who was of Pakistani origin, fled to Cuba after posting bail. The surety argued the bail should be exonerated because federal law restricts travel to Cuba and the surety could not, therefore, obtain the defendant's return. The Court of Appeal rejected this argument because the defendant voluntarily left the United States. "Cuba was just one of many places which defendant could flee to and be immune from surety's agents. Such risks were present when surety posted bond. Respondent did not *act* to increase those risks." (*Id.* at p. 996.)

Respondent also contends that Quintero's deportation does not amount to a "detention" under section 1305, subdivision (d) because there is no evidence that he is under the custody or control of Mexican civil authorities. We conclude that Quintero's forced deportation and the federal statutes barring his reentry "detain" him, by operation of United States law, from appearing in a California court. He was not only ordered to leave the country, he was physically escorted across the border by federal agents. Federal statutes prevent both his voluntary return, and his forced return by Surety. (8 U.S.C.A. §§ 1182 (a)(2)(A)(i)(II), 1327.)

In *People v. Meyers* (1932) 215 Cal. 115 [8 P.2d 837], the California Supreme Court recognized that it would be impossible for a bondsman to surrender a defendant if to do so would render the bondsman liable on a contempt charge. (*Id.* at p. 119.) This same principle has equal force where the bondsman must violate federal criminal law to surrender the defendant. Under these circumstances, Surety's production of Quintero was and is

impossible and he must be considered "detained" from appearing at his preliminary hearing by the United States government.

In *People v. United Bonding Ins. Co., supra,* 12 Cal.App.3d 349, an order of forfeiture was vacated because the law of Mexico prevented the defendant from returning to the United States. Here, it is the law of the United States that prevents Quintero's return. Appellant cannot produce him without committing a federal crime. Because Quintero was deported, *County of Los Angeles v. Maga, supra,* 97 Cal.App. 688, and *County of Los Angeles v. Ranger Ins. Co., supra,* 48 Cal.App.4th 992, are distinguishable. In those cases, the defendants voluntarily left the country.

### Bar to Reentry and Attorney General Discretion

Respondent contends that Quintero is not permanently barred from reentering the United States because he could apply to the Attorney General for a waiver of the relevant statute. The record contains some support for this contention. Surety presented to the trial court a copy of an INS form that is given to aliens who are deported after being convicted of a felony. This form notifies the alien that he or she has been deported as a felon, and is "prohibited from entering" the United States, "at any time because in addition to having been found inadmissible, you have been convicted of a crime designated as an aggravated felony. [¶] . . . [¶] After your deportation or removal has been effected, if you desire to reenter the United States within the period during which you are barred, you must request and obtain permission from the Attorney General to reapply for admission into the United States."

Respondent has cited no authority other than the INS form that would permit the reentry of a person who is involved in cocaine trafficking. Our review of present federal immigration law indicates that the statutory bars to legal reentry are nearly, if not flatly, impregnable for a convicted drug trafficker. Title 8 United States Code section 1182(a)(2)(A)(ii) provides that the bar does not apply to persons convicted as juveniles or to those convicted of misdemeanors. The same statute, however, also provides: "Any alien who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker in any such controlled substance . . . is inadmissible." (8 U.S.C.A. § 1182(a)(2)(C).) Later subdivisions grant the Attorney General very limited discretion to, "parole into the United States temporarily . . . for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States," (8 U.S.C.A. § 1182(d)(5)(A),) or to waive the reentry bar for a person who has been convicted of, "a single offense of simple possession of 30 grams or less of marijuana . . . ." (8 U.S.C.A. § 1182(h).)

In the absence of any citation to contrary authority, we are persuaded that Surety could not have lawfully surrendered Quintero to obtain exoneration of the bond. It also appears that Quintero may not now reenter the country or obtain a waiver of the reentry bar. Phrased otherwise, he has been detained by operation of federal law. It was and is impossible for Surety to surrender Quintero.

### Clean Hands, Dirty Hands, or Not Involved

Respondent contends the bail should remain forfeited because Surety should have known Quintero was deportable and Ventura County did not act to increase the risk that he would be deported. Just how Surety should have known that Quintero was deportable is not demonstrated. Quintero presented a California driver's license, a Social Security card, and a resident alien registration card. While these may have been fraudulent documents, there has been no showing that Surety had any reasonable suspicion that Quintero was deportable when it posted the bailbond. If Surety should have known that Quintero was deportable then the Sheriff of Ventura County, who released Quintero on bond, also should be chargeable with knowledge that Quintero was illegally in the United States. We presume that law enforcement officials have greater access to immigration status than does a bondsman. We are convinced that neither Surety nor the sheriff can be faulted. Both were duped into the good faith belief that Quintero was lawfully in the United States. While Quintero may have dirty hands, he is not a party to this action. Surety's and respondent's hands are clean.

Finally, we reject respondent's contention that the bond should remain forfeited because neither Ventura County nor the State of California participated in the deportation. Section 1305, subdivision (d) is not, by its own terms, limited to detention by California civil authorities. (*People v. Hadley* (1967) 257 Cal.App.2d Supp. 871, 880-881 [64 Cal.Rptr. 777].) Rather, it applies regardless of the jurisdiction in which the defendant is detained. (*People v. Pugh, supra,* 9 Cal.App.3d at p. 251.)

The order denying appellant's motion to vacate forfeiture is reversed.

Gilbert, P. J., and Coffee, J., concurred.