Filed 4/7/15  Certified for Publication 4/21/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| COUNTY OF LOS ANGELES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FINANCIAL CASUALTY & SURETY INC.,<br><br>    Defendant and Appellant. | B251223<br><br>(Los Angeles County<br>Super. Ct. No. SJ1526) |

APPEAL from an order of the Superior Court of Los Angeles County. Lia Martin, Judge.  Reversed and remanded with directions.

E. Alan Nunez for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Ruben Baeza, Jr., Assistant County Counsel and Lindsay Yoshiyama, Deputy County Counsel for Plaintiff and Respondent.

_____

Appellant Financial Casualty & Surety Inc. (Financial Casualty) appeals the denial of its motion under Code of Civil Procedure section 473, subdivision (b) asking the trial court to consider a prior motion to vacate forfeiture and exonerate bond that was taken off calendar due to its attorney's mistake, inadvertence, surprise or excusable neglect. Because Financial Casualty established surprise and excusable neglect due to misinformation from a court clerk, we reverse. The matter is remanded for the trial court to determine if there are grounds to vacate forfeiture and exonerate bond due to a permanent disability under Penal Code section 1305, subdivision (d)[1] because the bailee, Giovanni Santana (Santana), was deported to Mexico and barred from reentry into the United States for 20 years. If there is a permanent disability, the trial court is directed to set aside summary judgment on the forfeiture of Financial Casualty's bond, and then to vacate that forfeiture and exonerate the bond. Otherwise, the trial court shall deny the motion on the merits.

## FACTS

Santana was charged with assault with a deadly weapon (§ 245, subd. (a)(1)) and issuing criminal threats (§ 422).

After Financial Casualty posted a $50,000 bail bond, Santana did not appear for arraignment. On August 9, 2012, the court clerk mailed notice of forfeiture of the bond to Financial Casualty. The notice stated that Financial Casualty's obligation to pay the bond would become absolute on the 186th day following the date of mailing[2] unless Santana was surrendered to the court or custody, or Financial Casualty made a motion to vacate the forfeiture.

A week before the expiration of Santana's 186-day appearance period on February 4, 2013, Financial Casualty filed a motion to vacate the forfeiture and exonerate the bond. It cited section 1305, subdivision (d), which provides: "In the case of a

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The appearance period is 180 days, but it is extended to 185 days if the notice is mailed. (§ 1305, subd. (b).) Here, the 185th day fell on a Sunday, so the appearance period was extended to the 186th day.

2

permanent disability, the court shall direct the order of forfeiture to be vacated and the bail or money or property deposited as bail exonerated if, within 180 days of the date of forfeiture or within 180 days of the date of mailing of the notice[,] if notice is required [under] subdivision (b), it is made apparent to the satisfaction of the court that both of the following conditions are met:  [¶]  (1) The defendant is . . . unable to appear in the court due to . . . detention by . . . civil authorities.  [¶]  (2) The absence of the defendant is without the connivance of the bail."  According to the Financial Casualty's motion, Santana had been deported to Mexico.

Exhibit C to the motion contained an Internet printout that purported to set forth the immigration history of a person named Geovanni Calvo-Santana (Calvo-Santana). The printout stated that he was apprehended on July 28, 2012, and was charged with being an "Alien Present Without Admission or Parole."  The charge was sustained, and he was removed to Mexico.  Also attached to the exhibit was a "Warning to Alien Ordered Removed or Deported," which stated that Calvo-Santana was prohibited from entering the United States for 20 years.  According to the warning, he was found to have reentered the United States illegally, and a prior order of deportation had been reinstated.

The County did not oppose the motion.

The motion was called for a hearing at 9:00 a.m. on February 22, 2013.  On the grounds that Financial Casualty did not appear, the trial court took the matter off calendar.  Subsequently, on March 25, 2013, the trial court entered summary judgment on the forfeiture.

In April 2013, Financial Casualty filed a motion to set aside the summary judgment on the forfeiture due to its attorney's mistake, inadvertence, surprise or excusable neglect (Code Civ. Proc., § 473, subd. (b)), and to vacate forfeiture and exonerate bond.  The attorney for Financial Casualty, Mathew J. Singer (Singer), submitted a declaration stating that on February 22, 2013, he checked into Department J at the Long Beach Courthouse and was advised the trial court would be on the bench at 9:00 a.m.  Singer returned at approximately 9:00 a.m. and was told by the clerk that the trial court had reviewed the motion and granted the requested order.  As a result, Singer

3

left the courtroom. If he had known the matter was going to be called, Singer would have stayed.

In opposition, the County filed a declaration by Lori McCaskill (McCaskill), a judicial assistant in the Los Angeles Superior Court. According to McCaskill, she worked in Department J at the Long Beach Courthouse. On February 22, 2013, Financial Casualty's motion was called for a hearing. The matter was taken off calendar because Financial Casualty did not appear. Per McCaskill, "In my experience as a Judicial Assistant with the Los Angeles Superior Court, it is common practice that when counsel files and sets a motion on calendar, the matter is called, on the record, and the judge makes a ruling or takes the matter under submission." She also stated, "As a Judicial Assistant, it is neither my custom or habit to advise counsel on a matter set for motion, to advise them of a judge's ruling on that motion, prior to, or without a case being called on the record."

Financial Casualty's motion was heard and denied on August 16, 2013. The trial court reasoned that it lacked jurisdiction to rule on the motion because it was not being heard within 30 days of February 11, 2013, the expiration of Santana's 186-day appearance period. As authority, the trial court relied on the deadline for motions to vacate in section 1305, subdivision (j), and on *People v. The North River Ins. Co.* (2011) 200 Cal.App.4th 712 (*North River*).

This timely appeal followed.

## DISCUSSION

### I. Standard of Review.

Whether "section 473 relief is available in the context of [a] bail bond forfeiture proceeding" is a question of law subject to our independent review. (*North River*, *supra*, 200 Cal.App.4th at p. 717.)

### II. Motion Under Code of Civil Procedure Section 473 Not Barred by Lack of Jurisdiction.

A motion to set aside forfeiture must be filed before the expiration of the appearance period in section 1305, subdivision (b), and must be heard within 30 days of

4

that expiration date. (§ 1305, subd. (j).) As we explained in *North River*, a court that does not strictly follow these statutes acts in excess of its jurisdiction. (*North River*, *supra*, 200 Cal.App.4th at p. 717.) However, these statutes do not bar a surety from filing a motion under Code of Civil Procedure section 473 seeking relief from the denial of a motion to vacate a forfeiture as long as the motion to vacate was timely filed and set for a timely hearing. (*North River*, *supra*, 200 Cal.App.4th at pp. 719–721.) Here, Financial Casualty's motion to vacate the forfeiture pursuant to section 1305, subdivision (d) was filed before Santana's 186-day appearance period expired on February 11, 2013, so it was timely filed. The motion was set to be heard on February 22, 2013, which was within the 30-day postappearance period window set forth in section 1305, subdivision (j) for the hearing of such motions. Thus, the motion was set to be heard in a timely fashion. Consequently, we conclude that the trial court erred when it ruled that it lacked jurisdiction to hear the motion.

## III. Grounds for Relief Under Code of Civil Procedure Section 473 Established.

A trial court may relieve a party or his or her attorney from a "proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect." (§ 473, subd. (b).) A motion seeking such relief must be made "within a reasonable time, in no case exceeding six months, after. . . the proceeding was taken . . . " (*Ibid.*) "[I]t is the policy of our law to allow each contested cause to be tried on its merits. . . . [S]ection 473[] is a legislative expression of this policy." (*Hodge Sheet Metal Products v. Palm Springs Riviera Hotel* (1961) 189 Cal.App.2d 653, 657 (*Hodge Sheet Metal*).) Consequently, "'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default. [Citations.]' [Citation.]" (*Parage v. Couedel* (1997) 60 Cal.App.4th 1037, 1042.)

In our view, Financial Casualty established grounds for relief.

Singer declared that he appeared in Department J at 8:30 a.m. on February 22, 2013, and was told that the trial court would take the bench at 9:00 a.m. When he reappeared at about 9:00 a.m., he was told that the motion had been granted. As a result, he left. However, unbeknownst to him, the matter was called. Because no representative

5

for Financial Casualty was present, the trial court took the matter off calendar. Singer's declaration was undisputed. While McCaskill stated general policies in her declaration, and her own custom and habit, she did not deny that she told Singer that his motion had been granted. Thus, the evidence demonstrates surprise, which means "'some "condition or situation in which a party to a cause is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against." [Citation.]'" (*Hodge Sheet Metal*, *supra*, 189 Cal.App.2d at pp. 656–657.) In addition, these facts illustrate excusable neglect. Singer had no reason to suspect that he had been misinformed. Indeed, lawyers have every right to reasonably rely upon what they are told by a trial court's staff.[3]

## IV. Deportation Grounds for Relief Under Section 1305.

Under section 1305, subdivision (d)(1), a forfeiture must be vacated if there is a permanent disability due to detention by civil authorities, and if the bailee did not collude with the surety. If a bailee is temporarily disabled, meaning he is temporarily unable to appear in court, then the trial court shall order tolling of the appearance period. (§ 1305, subd. (e)(1).) There "is a low threshold of proof" for establishing grounds to either

---

[3] During oral argument, the County argued for the first time that Financial Casualty did not file its section 473 motion within a reasonable time. We decline to consider this argument because it raises factual issues not raised below. (*Roger H. Proulx & Co. v. Crest-Liners, Inc.* (2002) 98 Cal.App.4th 182, 203; *Al-Sal Oil Co. v. State Bd. of Equalization* (1991) 232 Cal.App.3d 969, 989.) In any event, we note that according to the County's opposition below, "Notice of Entry of Summary Judgment on Forfeited Bond and Demand for Payment" was sent to Financial Casualty on March 25, 2013. Taking this at face value, and assuming it means notice was mailed, Financial Casualty did not receive the notice for several more days. Thus, when the section 473 motion was filed less than a month later on April 24, 2013, it was filed within a reasonable time. At oral argument, the County implied that Financial Casualty had notice of its motion to vacate being taken off calendar on February 22, 2013 , and it unreasonably delayed seeking relief for two months. But the appellate record contains no evidence that Financial Casualty received notice at any time prior to receiving notice of entry of summary judgment. Moreover, the County cited no law establishing that a two-month delay is unreasonable.

6

vacate the forfeiture or toll. (*People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1490.)

"A person may be 'detained' within the meaning of section 1305, subdivision (d), without being in the actual physical custody of civil authorities. 'It is sufficient under this section . . . if it is proven that the defendant was restrained by civil authorities and that the restraint prevents his appearance on the date set for that appearance. [Citation.]'" (*People v. American Surety Ins. Co.* (2000) 77 Cal.App.4th 1063, 1065 (*American Surety*).) Thus, a criminal defendant who is deported to Mexico is detained for purposes of section 1305, subdivision (d) when federal statutes prevent his return. (*American Surety*, *supra*, 77 Cal.App.4th at p. 1066.)

In cases such as the one at bar—where the bailee is barred from reentry for a set period of time—a question arises as to whether the deportation establishes a permanent disability under section 1305, subdivision (c), or a temporary disability under section 1305, subdivision (e). We rely on "[n]otions of fairness, common sense, and the rule requiring [courts] to construe the statutory scheme against forfeiture . . ." (*American Surety*, *supra*, 77 Cal.App.4th at pp. 1064–1065), and conclude that a bailee "is . . . permanently unable to appear" (§ 1305, subd. (d)(1)) if he or she cannot be surrendered to the court or custody during the time within which it is reasonably probable for a criminal trial to proceed.

Citing to *People v. Argonaut Ins. Co.* (1976) 64 Cal.App.3d 665 (*Argonaut*), the County contends that Financial Casualty cannot rely on section 1305, subdivision (d) unless it first attempted to obtain relief from deportation. (*Argonaut*, *supra*, at p. 667.) According to *Argonaut*, "[a]dministrative procedures exist whereby execution of [an] deportation order [can be] stayed," making an alien's appearance in court possible. (*Id.* at p. 667.) Also according to *Argonaut*, the remedy provided by title 8 United States Code section 1182(d)(5)(A) must be exhausted. That statute provides that the "Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian

7

reasons or significant public benefit any alien applying for admission to the United States[.]" (8 U.S.C. § 1182(d)(5)(A).)

We decline to follow *Argonaut*.

It does not establish, nor does the County argue, that a surety has standing under title 8 United States Code section 1182 to apply for relief from deportation on an alien's behalf. Assuming for the sake of argument that a surety had standing to apply for relief from deportation on an alien's behalf, we make the following observations. Federal immigration law provides that a previously deported alien is inadmissible for 20 years. (8 U.S.C. § 1182(a)(9)(A)(ii)(II).) Our research reveals two potential ways around this bar. After 10 years, the alien can seek permission from the Secretary of Homeland Security to apply for admission. (8 U.S.C. § 1182(a)(9)(C)(iii).) Also, a waiver of inadmissibility is available to a self-petitioner under the Violence Against Women Act (VAWA) "if there is a connection between— [¶] (I) the alien's battering or subjection to extreme cruelty; and [¶] (II) the alien's removal, departure from the United States, reentry or reentries into the United States; or attempted reentry into the United States." (8 U.S.C. § 1182(a)(9)(C)(iii).) There is no indication in the record that Santana qualifies for a waiver under the VAWA. Thus, if Santana and Calvo-Santana are the same person, he is barred from reentry for a minimum of 10 years.

Regarding parole under title 8 United States Code section 1182(d)(5)(A), neither *Argonaut* nor the County establish that a surety has standing to seek parole for an alien. Even if a surety had standing, we would generally assume that paroling an alien into the United States so he can stand trial does not serve as an urgent humanitarian purpose. Moreover, except in the rare circumstance, we doubt that it would provide a significant public benefit for an alien to stand trial.

There are other hurdles for the appearance of a deported criminal defendant. The statutory scheme contemplates that if a criminal defendant is in another country, he or she will be involuntarily returned only if the prosecuting agency seeks extradition. (§ 1305,

8

subds. (f) and (g).)[4]  In light of this, administrative relief from deportation will be moot if the criminal defendant has been deported to a country where extradition is not feasible because there is no extradition treaty, or because of that country's extradition policy. (See *People v. Lexington National Ins. Corp.* (2010) 189 Cal.App.4th 1242, 1247 [record indicating "that Mexico would not extradite for a nonheinous crime"].)  Administrative relief will also be moot if the prosecuting agency has no intent to seek extradition.  This is an issue that neither *Argonaut* nor the County analyze.

Our decision not to follow *Argonaut* is bolstered by *American Surety*.  It rejected the government's suggestion that a surety could not seek to vacate a forfeiture unless it first sought a waiver on behalf of the alien.  The court surveyed the relevant federal immigration law and determined that the alien at issue could not obtain a waiver.  It impliedly found that the alien could not be paroled into the United States through the Attorney General using title 8 United States Code section 1182(d)(5)(A).  (*American Surety*, *supra*, 77 Cal.App.4th at pp. 1067–1068.)  Thus, *American Surety* is consistent with our opinion and at loggerheads with *Argonaut*.

After analyzing the law, we hold that if a bailee is deported and a surety seeks to vacate a forfeiture under section 1305, subdivision (a)(1) based on a permanent disability,

---

[4]  Section 1305, subdivision (f) provides:  "In all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

Section 1305, subdivision (g) provides:  "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

9

it must show (1) a deportation, (2) the period of time the bailee is deemed inadmissible under federal law, and (3) that the period of inadmissibility would render prosecution improbable based on the totality of the circumstances, including the statute of limitations. If the surety satisfies its burden, a governmental entity can defeat a finding of permanent disability by showing (a) that there is a reasonably achievable administrative remedy that the surety failed to pursue in order to secure the bailee's presence in the trial court, or (b) the bailee is subject to extradition in the country to which he or she was deported, it is reasonably probable that the prosecuting agency would have pursued and obtained the bailee's extradition if he or she had been located by the surety, and the bailee could have been prosecuted after being extradited.[5]

## V. Remand Necessary.

Financial Casualty asks us to consider and grant its motion under Code of Civil Procedure section 473, and to then set aside summary judgment, vacate the forfeiture and exonerate bond. (Code Civ. Proc., § 43 [appellate courts may direct the proper order to be entered]; *Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1459, fn. 7 ["where it appears from the record as a matter of law there is only one proper judgment on undisputed facts, we may direct the trial court to enter that judgment"].)  But the evidence below was not sufficiently developed regarding permanent disability, and we therefore cannot determine the proper order.

Financial Casualty submitted documentation suggesting that Calvo-Santana was deported on the grounds that he was an alien present without admission or parole.

---

[5]     We need not consider certain cases cited by the County, namely *People v. Meyers* (1932) 215 Cal. 115 and *Taylor v. Taintor* (1873) 83 U.S. 366.  They did not analyze whether a deportation rendered a criminal defendant unable to appear within the meaning of section 1305, subdivision (d)(1).  We also need not consider *County of Los Angeles v. Maga* (1929) 97 Cal.App. 688.  In that case, after two aliens were ordered deported, they were released from custody.  They could have appeared in the criminal cases.  Instead, they voluntarily left the United States.  Under those circumstances, the surety could not seek to vacate the forfeitures.  (*Id*. at pp. 690–692.)  There is no evidence that Santana, if he is the same person as Calvo-Santana, was released from federal custody and voluntarily left the United States.

However, it did not submit any documentation proving that Santana and Calvo-Santana are the same person. We conclude that the matter must be remanded for the trial court to consider new evidence and argument from the parties, and to then determine whether Santana was permanently disabled from appearing within the meaning of section 1305, subdivision (d)(1).

## DISPOSITION

The order denying Financial Casualty's motion under Code of Civil Procedure section 473, subdivision (b) is reversed and remanded. On remand, the trial court shall consider new evidence and arguments as to whether Santana was permanently disabled from appearing within the meaning of section 1305, subdivision (d)(1). If so, the trial court must vacate summary judgment, vacate the forfeiture and exonerate the bond. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 11:73a, p. 11–28 ["Directions to enter a particular judgment on remand may be conditioned on the outcome of a retrial ordered on a particular issue"]; *Springmeyer v. Ford Motor Co.* (1998) 60 Cal.App.4th 1541, 1575.) But if permanent disability is not established, the trial court must deny the motion.

Financial Casualty shall recover its costs on appeal.


_____, Acting P. J.
          ASHMANN-GERST

We concur:


_____,J.
        CHAVEZ


_____, J.
        HOFFSTADT

11

Filed 4/21/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| COUNTY OF LOS ANGELES, | B251223 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SJ1526) |
| v. | |
| FINANCIAL CASUALTY & SURETY INC., | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Appellant. | |

THE COURT:[*]

The opinion in the above-entitled matter filed on April 7, 2015, was not certified for publication in the Official Reports.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

[*]    ASHMANN-GERST, Acting P. J., CHAVEZ, J., HOFFSTADT, J.