Filed 12/20/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B271421 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. OSJ1813) |
| v. | |
| THE NORTH RIVER INSURANCE COMPANY et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kerry Bensinger, Judge. Affirmed.

Jefferson T. Stamp for Defendants and Appellants.

Mary C. Wickham, County Counsel, Ruben Baeza, Jr., Assistant County Counsel, and Jessica C. Rivas, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

After a criminal defendant failed to appear at his arraignment, the trial court forfeited the bail bond and thereafter denied the bail surety's motion to vacate that forfeiture. The surety has appealed. Its appeal presents three questions. First, may a trial court grant a second extension of the statutory "appearance period" (the period in which a surety may return the defendant or seek vacatur of the forfeiture) more than 180 days after it has granted a first extension? Second, may a trial court grant a motion to vacate the forfeiture of a bail bond on a ground not asserted and on evidence not presented to the court until *after* the appearance period has expired? Lastly, is a surety entitled to vacatur of the forfeiture of a bail bond on the basis of permanent or temporary "disability" under Penal Code section 1305, subdivisions (d) and (e),[1] respectively, when the defendant charged with trafficking narcotics has voluntarily fled the country and is consequently barred from reentry under federal immigration law due to the pending charges? We hold that the answer to all three questions is "no," and affirm.

### FACTS AND PROCEDURAL BACKGROUND

I.      **Facts**

In mid-June 2014, police pulled over a car driven by Tae Ho Kim (defendant). Defendant consented to a search of the car, and police found (1) a shoebox containing 4,000 ecstasy pills and $10,100 in cash, (2) two one-liter bottles of codeine, and (3) two bags containing 97.8 grams and 26.2 grams of marijuana, respectively. During the search, police sat defendant sat on a curb; after police discovered the drugs, he stood up, and bolted into traffic. He was quickly re-apprehended, and arrested.

---

1      All further statutory references are to the Penal Code unless otherwise indicated.

2

The next day, defendant signed a contract with appellants The North River Insurance Company and its bail agent, Bad Boys Bail Bonds (collectively, the surety). Six days after that, the surety posted a $100,000 bond for defendant's release, which included a promise to assure defendant's appearance for arraignment on August 20, 2014.

On July 14, 2014, unbeknownst to the surety, defendant fled the United States by traveling to Tijuana, Mexico, and then catching a flight to Tokyo, Japan.

On August 19, 2014, the People filed a felony complaint against defendant. Specifically, the People charged defendant with the felonies of (1) possessing a controlled substance (ecstasy) for sale (Health & Saf. Code, § 11378); (2) selling, offering to sell, or transporting a controlled substance (ecstasy) (*id.*, § 11379, subd. (a)); (3) possessing a controlled substance (codeine) (*id.*, § 11350, subd, (a)); (4) selling, offering to sell, or transporting a controlled substance (marijuana) (*id.*, § 11360, subd. (a)); and with the misdemeanor of (5) resisting, obstructing, or delaying a police officer (§ 148, subd. (a)(1)).

When defendant did not appear for his scheduled arraignment on August 20, 2014, the trial court forfeited the bail bond. The court mailed notice of the forfeiture to the surety on August 26, 2014. Pursuant to section 1305, subdivision (b), the appearance period was accordingly scheduled to expire 185 days later, on February 27, 2015. (§ 1305, subd. (b)(1).)

One week before the appearance period was to expire, on February 20, 2015, the surety moved to extend the period for an additional 180 days pursuant to section 1305.4.

On March 17, 2015, the trial court granted the motion. Although the trial court indicated on the record and in its written

3

order that the extension was 180 days, the minute order set the extended deadline as September 11, 2015 (which was a 178 day extension), and the parties thereafter treated the extension as being 178 days.

On September 11, 2015, the last day of the extended 178-day period, the surety filed a motion for an additional two-day extension of the appearance period. Twenty-eight days later, on October 9, 2015, the trial court granted the surety's request and ordered that the appearance period would end two days later, on October 11, 2015. Because October 11, 2015 was the Sunday before a Monday holiday, the last day of the appearance period was October 13, 2015. (Code Civ. Proc., §§ 12, 12b.)

## II.    Procedural Background

On the last day of the appearance period, the surety filed a notice of motion to vacate the forfeiture of its bond. The notice of motion alleged that law enforcement had provided information about defendant's arrest to federal immigration authorities, who then issued a "federal ICE detainer/warrant for deportation and/or removal," which had "encouraged [defendant] to flee the United States for Japan," thereby "materially increas[ing] the risk to the [s]urety." On this basis, the notice sought: (1) vacatur of the forfeiture (a) under section 1305, subdivision (d), and (b) as a breach of the implied covenant; (2) temporary tolling of the appearance period under section 1305, subdivisions (e) and (h); and (3) a continuance to conduct discovery under section 1305, subdivision (j). Ten days later, the surety filed (1) the motion itself, which asserted the same grounds, and (2) an affidavit from the surety's attorney and its investigator.[2] Neither the notice of

---

2    The surety also filed an action for declaratory relief against defendant's immigration attorney, but later withdrew that action.

4

motion nor the motion itself sought vacatur on the ground that defendant was barred from reentering the United States due to the pending drug charges.

After the trial court granted two requests by the People for additional time to respond, the surety filed: (1) a supplemental motion asserting, for the first time, that the forfeiture should be vacated because the pending charges barred defendant's readmission to the United States under federal immigration law and thus rendered him permanently or temporarily disabled under section 1305, subdivisions (d) and (e); (2) a declaration from the surety's investigator stating that he did not learn that defendant had fled the United States until October 9, 2015; and (3) two declarations—one from defendant's counsel and one from defendant's immigration attorney—authenticating an August 6, 2014 letter to defendant from the United States Citizenship and Immigration Services denying defendant's 2010 application for permanent resident status because defendant did not appear for his appointment to be fingerprinted on July 18, 2014.

Following the People's filing of its opposition, and the surety's filing of a reply, the trial court issued a 13-page order denying the surety's motion to vacate forfeiture of the bond. The court expressed some doubt as to whether the appearance period was properly extended to October 13, 2015, but "[r]ightly or wrongly," treated the motion to vacate as being properly before the court. The court then denied the surety relief for three reasons. First, the surety's motion was untimely because (1) its "subdivision (d) argument[s] as noticed [in its initial] October 13, 2015 [notice of motion were] quite different than what was asserted in the [subsequently filed supplemental] points and authorities"; and (2) the Citizenship and Immigration Services

5

letter that supported the surety's claim for permanent disability was not submitted as evidence until after the appearance period ended.  Second, the surety did not prove that defendant fell within the confines of section 1305, subdivisions (d) and (e) because the surety's proof that "defendant actually fled the country" was both incompetent and inadequate, and because the surety never proved that defendant would be denied a visa for reentry if he applied for one or that he could not be extradited from wherever he was currently located, which was unknown. Lastly, even if defendant were outside of the country and was inadmissible, defendant still did not fall within the confines of section 1305, subdivisions (d) and (e) because his act of voluntarily departing the United States took him outside of these provisions.

The trial court subsequently entered summary judgment for the People, and entered judgment for $100,370—the amount of the bond plus court costs.

The surety filed this timely appeal.

## DISCUSSION

To resolve this appeal, we must address three questions: two procedural and one substantive.  Procedurally, we must decide (1) whether the surety's motion was timely filed (that is, within the "appearance period"), and, if so, (2) whether the trial court could refuse to consider the merits of the surety's motion to the extent the surety relied upon a theory not raised and evidence not presented until after the appearance period ended.[3]

_____

[3]    The theory for vacatur asserted by the surety during the appearance period—namely, that local law enforcement's act of forwarding arrestees' fingerprints to federal immigration authorities, as required by law, constituted state inference with

6

Substantively, we must decide whether a defendant is "det[ained] by . . . civil authorities" within the meaning of section 1305, subdivisions (d) and (e) if he voluntarily flees the United States and is barred from reentry under federal immigration law by virtue of drug charges pending against him.

We review the denial of a surety's motion to vacate forfeiture of a bond for an abuse of discretion. (*People v. Wilcox* (1960) 53 Cal.2d 651, 656 (*Wilcox*); *People v. Financial Casualty & Surety, Inc.* (2017) 14 Cal.App.5th 127, 134 (*Financial Casualty*).) To the extent the trial court's ruling rests on statutory construction or the application of the law to undisputed facts, our review is de novo. (*People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 379; *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.) To the extent the court's ruling rests upon the application of the law to disputed facts, our review is for substantial evidence. (*People v. Financial Casualty & Surety, Inc.*, *supra*, at p. 379.)

I.    **Procedural Issues**

A.    ***Was the surety's motion to vacate timely filed?***

Except in capital cases, a criminal defendant has the right to be "released on bail by sufficient sureties . . . ." (Cal. Const., art. I, § 28, subd. (f)(3).) One method for such release is a bail bond. A bail bond is a promise by a surety to guarantee the defendant's appearance in court on pain of forfeiture of the bond's full amount; a defendant obtains such a bond by paying the

---

the surety-defendant relationship warranting relief under *People v. Western Ins. Co.* (2013) 213 Cal.App.4th 316, 322 because it prompted those authorities to issue an immigration warrant, which then prompted defendant to flee—was rejected both procedurally and on the merits by the trial court. The surety does not challenge the court's disposition of this theory on appeal.

7

surety a percentage of the bond's full amount up front and by providing collateral to secure the remainder should the bond be forfeited due to his non-appearance.  (*People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 42.)

In most cases, a surety has a period of time—known as the "appearance period"—in which it can ask the court to vacate the forfeiture, either by returning the defendant to court or by otherwise demonstrating entitlement to vacatur.  (§ 1305, subds. (c)-(g).)  A trial court lacks jurisdiction to entertain a motion to vacate forfeiture if filed after the appearance period has ended. (*Financial Casualty*, *supra*, 14 Cal.App.5th at p. 138; *People v. Ramirez* (1976) 64 Cal.App.3d 391, 398 (*Ramirez*).)  The initial appearance period is 185 days where, as here, the notice of forfeiture is mailed to the surety.  (§ 1305, subd. (b)(1).)  The surety has the statutory right to seek additional time—up to an additional 180 days—upon a showing of "good cause."  (§ 1305.4.) A surety's motion for an extension must be filed within the initial appearance period, although the court may rule on the motion up to 30 days *after* the period ends.  (§ 1305, subd. (j).)  If the court finds "good cause," it may "order the [appearance] period extended to a time not exceeding 180 days from [the date of] the order."  (§ 1305.4.)

A court may extend the appearance period for fewer than 180 days, but if it does so, and if the surety seeks any additional extensions, "the total allowable extension is [still] limited to 180 days *from the date of the first extension order*, regardless of how many individual extensions the court orders."  (*People v. Financial Casualty & Surety, Inc.*, *supra*, 2 Cal.5th at p. 46, fn. 2, italics added.)  In other words, the 30-day "grace period" that empowers a court to rule on the first extension motion for a

8

limited time after the initial appearance period has expired does not apply to subsequent extension motions. (*County of Los Angeles v. Allegheny Casualty Co.* (2017) 13 Cal.App.5th 580, 586-587 (*Allegheny Casualty*).) This interpretation balances competing concerns: It accords sureties ample time to investigate and seek relief from a forfeiture, but does not create the incentive for sureties to seek multiple, piecemeal extensions, each with its own 30-day grace period.

Applying this law, the surety's motion to vacate the forfeiture was untimely because it was filed after the extended appearance period ended. The trial court's order granting a 178-day extension was issued on March 17, 2015. Thus, the "total allowable extension" was limited to 180 days after that March 17, 2015 order—that is, September 13, 2015. The surety's motion to vacate was not filed until a month later (on October 13, 2015), and is accordingly untimely. To be sure, the surety filed its second motion to extend the appearance period before the first extended period expired on September 11, 2015; the trial court ruled on that motion within 30 days of September 11, 2015; and the court granted the surety an additional two days. But, as the Court of Appeal held on nearly identical facts in *Allegheny Casualty*, the court's second extension order was ineffective because it was entered more than 180 days after the order granting the first extension and because there is no 30-day "grace period" for subsequent motions to extend. (*Allegheny Casualty*, *supra*, 13 Cal.App.5th at pp. 582, 585-587.)

The surety argues that *Allegheny Casualty* does not control because the trial court sent conflicting signals as to whether the extension was 178 or 180 days; because this mistake by the court qualifies as "surprise" to the surety under Code of Civil Procedure

9

section 473, subdivision (b); and because the trial court's order granting the two-day extension on October 9, 2015, was really an order "intuitively grant[ing] relief under [Code of Civil Procedure] section 473(b) to reassess the 180-day period based on equity." We reject this argument because any surprise stems from the trial court's (and the parties') failure to anticipate the proper construction of the bail statutes (by *Allegheny County* and us), not from any mix-up regarding the final day of the extended appearance period. We need not consider the potentially more troubling argument—namely, that if the surety had known the period was 180 days, it would have filed a motion to vacate rather than a motion for additional time on that last day—because the surety does not make that argument and because the surety's motion to vacate still fails for the reasons described more fully below.

**B.** ***Was the surety's argument that defendant was "detained" by virtue of the bar to his reentry timely presented?***

When a surety has filed a timely motion to vacate the forfeiture of a bail bond, a trial court's power to grant that relief is not unfettered. A court may not grant relief "based on facts occurring after the [appearance] period had expired." (*People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 82; *Ramirez, supra*, 64 Cal.App.3d at p. 401.) A court may also not grant relief based on theories not "actually asserted" during the appearance period. (*Ramirez*, at p. 401; *People v. Resolute Ins. Co.* (1975) 46 Cal.App.3d 249, 255 (*Resolute*) [surety entitled to relief only on "grounds . . . properly set forth" in motion]; cf. *Resolute*, at pp. 252-255 [motion properly setting forth grounds for relief not invalid simply because moving party additionally seeks inapplicable relief]; *People v. Lexington National Ins. Corp.* (2010)

10

181 Cal.App.4th 1485, 1490-1491 (*Lexington National*) [motion properly setting forth grounds for relief not invalid because it cites inapplicable statutory provisions].)

It is unclear whether a trial court may grant relief on a theory actually asserted (and based on facts occurring) during the appearance period when the evidence necessary to support that theory is not presented to the court until after the appearance period has expired. Several cases indicate that a court may not. (*People v. United Bonding Ins. Co.* (1969) 272 Cal.App.2d 441, 446 [requiring proof to be "presented within the 180-day [appearance] period"]; cf. *Resolute*, *supra*, 46 Cal.App.3d at pp. 252-257 [proof presented within appearance period; court considers it].) However, our Supreme Court in *Wilcox*, *supra*, 53 Cal.2d at pages 653-655 relied upon evidence presented both before and after the expiration of the appearance period, although the Court did so without any discussion of its propriety (e.g., *Loeffler v. Target* (2014) 58 Cal.4th 1081, 1134 ""cases are not authority for propositions not considered"""]). We need not resolve this tension here because, at a minimum, this authority establishes that a trial court may not vacate the forfeiture of a bond on a theory the surety did not assert *and* did not support with evidence during the appearance period.

This rule makes sense. A contrary rule would effectively extend the appearance period by empowering a surety to make a placeholder filing during the appearance period that in no way limits its freedom to make post-appearance-period filings that rely on completely new theories for relief and theretofore unproduced evidence to support those theories. This is a result at odds with our Supreme Court's pronouncement that the period is already "generous" to sureties (*People v. Indiana Lumbermens*

11

*Mutual Ins. Co.* (2010) 49 Cal.4th 301, 313) and with its recognition that "[e]xtending the appearance period adds to the administrative burden on the court . . . ." (*People v. Financial Casualty & Surety, Inc.*, *supra*, 2 Cal.5th at p. 48).

In this case, the surety's initial notice of motion and motion did not assert the sole theory before this court on appeal. Although the surety cited section 1305, subdivisions (d) and (e) (along with subdivisions (h), and (j)), at no point did it argue that it was entitled to relief because defendant was barred from reentering the United States under federal immigration law. That theory was not asserted—and no evidence to support it was presented—until the surety's supplemental motion, which was filed after the appearance period ended (even if we treat the period as ending on October 13, 2015). As a result, the trial court acted appropriately when it ruled that the surety had not timely presented this theory.

The surety resists this conclusion with three arguments.

First, the surety argues that the courts in *Lexington National*, *supra*, 181 Cal.App.4th 1485, *People v. Accredited Surety & Casualty Co., Inc.* (2012) 203 Cal.App.4th 1490 (*Accredited Surety*), and *County of Los Angeles v. Financial Casualty & Surety Inc.* (2015) 236 Cal.App.4th 37 (*County of Los Angeles*) allowed a surety to obtain relief on theories not advanced in the motion to vacate filed within the appearance period.

We do not read these cases the same way. *Lexington National* held that a surety could seek relief under subdivisions (d) and (e) of section 1305, even though its motion cited only subdivision (c); however, the underlying theory—namely, that the defendant was in custody in another state—had been timely

12

asserted. (*Lexington National, supra*, 181 Cal.App.4th at pp. 1490-1491.) Here, the surety cited pertinent statutory provisions in its initial motion, but then advanced a completely different theory under those provisions. Getting the statutory citation wrong is different from entirely omitting a theory; the former still gives the trial court the opportunity to consider the gravamen of the theory, the latter does not. Indeed, were we to hold that a surety's citation to a statutory provision were enough by itself to preserve any and all theories for relief that might be asserted under that provision, sureties would be free to fashion new theories long after the appearance period has expired, as long as they cite every subsection of section 1305 in their initial motion. *Accredited Surety* is irrelevant because it addressed whether a surety was required to file a motion to obtain relief under subdivision (e) of section 1305 *at all*; the case held that a timely motion was required. (*Accredited Surety, supra*, 203 Cal.App.4th at pp. 1502-1503.) And *County of Los Angeles* directed that the trial court was to consider new evidence on remand from an appeal, but only as to a theory that was properly raised in the initial motion to vacate and only because the Court of Appeal had announced a new rule that altered the burden of proof by which that theory was to be evaluated. (*County of Los Angeles, supra*, 236 Cal.App.4th at p. 41, 45-47.) Neither of those circumstances is present here.

Second, the surety asserts that it is entitled to present evidence acquired after the appearance period has ended because bail proceedings are "special proceedings" (*County of Orange v. Classified Ins. Corp.* (1990) 218 Cal.App.3d 553, 557 ["a bail forfeiture proceeding is a special proceeding"]), such that the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) applies

13

(*City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, 286 ["the discovery act applies to statutorily enacted special proceedings that are silent with respect to discovery"]). If the surety may conduct discovery during bail proceedings, the surety reasons, surely it must be able to present the results of that discovery as evidence in those proceedings. This argument does not dictate a different result in this case. To begin, it deals at most with a surety's untimely presentation of evidence; it does nothing to excuse a surety's untimely assertion of an argument in favor of relief. As noted above, this case involves both. Further, even if we accept the surety's argument that the Civil Discovery Act applies and can provide default rules regarding discovery during bail proceedings, the bail provisions discussed above have been construed to place time restrictions on when a surety must raise arguments and present evidence, and those more specific provisions would likely control over the Civil Discovery Act's more general, default provisions. (*In re Shull* (1944) 23 Cal.2d 745, 750 ["It is the general rule that a special statute controls over a general statute."].)

Lastly, the surety contends that all of its evidence was submitted prior to the end of the appearance period (which, for these purposes, we are assuming was October 13, 2015) because defendant's drug trafficking charges were filed in August 2014, and because the surety's investigator learned about defendant's flight from the United States on October 9, 2015. This contention establishes, at best, that the facts necessary for relief occurred before the appearance period expired; it does not establish that the surety presented them *to the court* as a basis for relief during that period.

14

Thus, even if we treated the surety's motion as timely filed, the surety did not timely assert the sole argument for relief it presses on appeal, and the trial court properly denied relief on that basis.

## II. The Merits

A surety is entitled to have the trial court vacate the forfeiture of its bail bond if "it is made apparent to the satisfaction of the court" that (1) "[t]he defendant is deceased or otherwise permanently unable to appear in the court due to illness, insanity, or *detention by military or civil authorities*," and (2) [t]he absence of the defendant is without the connivance of the bail." (§ 1305, subd. (d), italics added.) Along similar lines, a surety is entitled to *tolling* of the appearance period if "it appears to the satisfaction of the [trial] court" that (1) "[t]he defendant is temporarily disabled by reason of illness, insanity, or *detention by military or civil authorities*," (2) "the defendant is unable to appear in court during the remainder of the 180-day period" due to "the temporary disability," and (3) "[t]he absence of the defendant is without the connivance of the bail." (§ 1305, subd. (e), italics added.)

Under either provision, a person is detained by military or civil authorities if he is subject to a ""restraint [that] prevents his appearance on the date set for that appearance. [Citations.]""" (*County of Los Angeles*, *supra*, 236 Cal.App.4th at p. 45; *People v. American Surety Ins. Co.* (2000) 77 Cal.App.4th 1063, 1065 (*American Surety*) [same]; *People v. United Bonding Ins. Co.* (1970) 12 Cal.App.3d 349, 352-353 (*United Bonding*) [same].) A defendant may be restrained from appearing even if he is not *physically* restrained. (*County of Los Angeles*, at p. 45.) The animating concern for granting a surety relief when a defendant

15

is restrained is that the restraint makes it impossible for the surety to fulfill its duty to secure the defendant's appearance in court.  (*American Surety*, at p. 1064; see generally Civ. Code, § 3531 ["The law never requires impossibilities."].)

Courts interpreting subdivisions (d) and (e) of section 1305 have nevertheless drawn distinctions between restraints that qualify for relief (either vacatur or tolling) and those that do not.

A surety is entitled to relief when the defendant is deported to a foreign country, at least where the defendant—following deportation—is also barred from reentering the United States. (*County of Los Angeles*, *supra*, 236 Cal.App.4th at p. 45 [defendant deported and barred from reentry for 20 years; surety entitled to vacatur of forfeiture]; *American Surety*, *supra*, 77 Cal.App.4th at pp. 1064-1068 [same].)  However, a surety is *not* entitled to relief when the defendant voluntarily departs the United States, seemingly without regard to whether he is barred from reentering the United States.  (*Financial Casualty*, *supra*, 14 Cal.App.5th at pp. 131-132, 138; *County of Los Angeles v. Ranger Ins. Co.* (1996) 48 Cal.App.4th 992, 996; *County of Los Angeles v. Maga* (1929) 97 Cal.App. 688, 690-692.)

How can these two lines of authority peacefully coexist? They differ in one critical respect—namely, the person or entity responsible for setting in motion the chain of events that led to the defendant's inability to reenter the country.  (See *People v. Bland* (2002) 28 Cal.4th 313, 335 [in the context of causing great bodily injury, noting that "proximate cause . . . is an act or omission that sets in motion a chain of events that produces" the injury]; *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 402 [in the insurance context, noting that the ""''efficient''"" "proximate cause" among multiple causes is the one

""'that sets others in motion"'"].)  In the case of deportation, the "civil [immigration] authorities" set in motion the events leading to the reentry bar; in the case of voluntarily flight, the defendant is solely responsible.  It is not a surety's job to guard against a defendant's involuntary deportation.  But "'the [voluntary] escape of [the] defendant is the business risk of [the] bail surety. . . . [and] is precisely the situation which [the] surety guarantees against.'"  (*County of Orange v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 795, 805, fn. 6; see also *People v. American Bankers Ins. Co.* (1991) 233 Cal.App.3d 561, 568 ["The bail contract encompasses a risk that the defendant will not appear."].)

To be sure, there is substantial evidence that defendant, now that he is outside the United States, would be barred from reentering for at least two reasons:  (1) federal immigration authorities, by virtue of the charges against him, have "reason to believe" that he "is or has been an illicit trafficker in any controlled substance" (8 U.S.C. § 1182(a)(2)(C)(i)); and (2) defendant "is not in possession of a valid unexpired immigration visa" (8 U.S.C. § 1182(a)(7)(i)(I)).  The first reentry bar does not require a conviction (*Garces v. U.S. Atty. Gen.* (11th Cir. 2010) 611 F.3d 1337, 1345), and may be satisfied by proof, as is present here, that a person was in sole control of a car containing a substantial quantity of narcotics (e.g., *id.* at p. 1350; *Cuevas v. Holder* (5th Cir. 2013) 737 F.3d 972, 975-976; *Chavez-Reyes v. Holder* (9th Cir. 2014) 741 F.3d 1, 3-4).  Critically, however, it is defendant who set in motion the chain of events leading to this bar when he voluntarily fled the country.  The surety is consequently not entitled to relief under subdivisions (d) or (e) of section 1305.

Two further reasons, beyond the precedent cited above, support our conclusion.

First, the situation presented in this case—that is, a defendant who voluntarily flees and is consequently barred from reentry—is functionally indistinguishable from the situation in which a defendant voluntarily flees the country to a foreign nation that has no extradition treaty with the United States. That is because, in both situations, the defendant has voluntarily fled the state and the surety is powerless to compel the defendant to appear before the court. In the latter situation, the surety is not entitled to relief. (*People v. Financial Casualty & Surety, Inc.*, *supra*, 10 Cal.App.5th at p. 383 ["Impossibility of extradition is not a defense in any event"; denying relief to surety under subdivision (g) of section 1305]; *County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 544 [same]; see also *People v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 812, 817-818 (*Ranger*) [extradition request denied; denying relief to surety under subdivision (c) of section 1305].) Were we to conclude that the surety's helplessness was always sufficient to warrant relief under subdivisions (d) or (e) of section 1305, we would be effectively nullifying the subdivisions providing that relief is not warranted in a functionally identical situation. Such an implied repeal is disfavored, and we see nothing in the text or legislative history of section 1305, subdivisions (d) or (e) to overcome the heavy presumption against such a repeal. (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 945.)

Second, were we to conclude that a bar to reentry constituted "detention" under subdivisions (d) and (e) of section 1305, we would be effectively immunizing sureties from liability

18

in a broad swath of cases—namely, any case in which a noncitizen defendant is charged with a narcotics crime. What is more, that immunity would automatically flow from the charge itself: Federal immigration law creates a bar to reentry upon a mere "reason to believe" a defendant "is or has been an illicit [drug] trafficker" (8 U.S.C. § 1182(a)(2)(C)(i)), and being charged with such a crime—because it typically rests upon probable cause to believe the crime has been committed—would almost always satisfy the requisite "reason to believe" standard. (Cf. *Saavedra Bruno v. Albright* (D.C. Cir. 1999) 197 F.3d 1153, 1157 [all that is needed is "'more than a mere suspicion'"].) We are disinclined to countenance such a result in the absence of any legislative intent to carve out such a potentially significant immunity for sureties, particularly when that immunity would likely exist at the very moment the surety signs the contract with the defendant, putting the surety in the position of signing a contract that has no legal effect because it imposes no liability upon the surety. (See *John v. Superior Court* (2016) 63 Cal.4th 91, 96 ["We construe [a] statute's words . . . to avoid absurd results."].)

The surety raises four arguments in response.

First, the surety urges us to follow the cases holding that the bar to reentry suffices when it is preceded by the defendant's deportation. We decline to do so for the reasons outlined above. Indeed, even those cases have recognized that the defendant's voluntary flight changes the calculus, and have distinguished the cases involving such flight. (E.g., *County of Los Angeles*, *supra*, 236 Cal.App.4th at p. 47, fn. 5.)

Second, the surety argues that *United Bonding*, *supra*, 12 Cal.App.3d 349 and *People v. Pugh* (1970) 9 Cal.App.3d 241 support its position. In both cases, the trial court granted the

19

surety relief from forfeiture when the defendant voluntarily fled California and was physically detained by officials in either a foreign country (in *United Bonding*) or another state (in *Pugh*). (*United Bonding*, at pp. 352-354; *Pugh*, at pp. 251-253.) Both *United Bonding* and *Pugh* were decided in 1970, before subdivision (g) of section 1305 was enacted to more specifically dictate what happens when a surety is able to track down and detain a defendant outside California. (See Stats. 1969, ch. 1194, §2; Stats. 1969, ch. 1259, § 6; Stats. 1970, ch. 936, § 2.) Their interpretation of a more general provision that has been subsequently displaced by a more specific provision is entitled to little or no weight. (Accord, *Ranger*, *supra*, 61 Cal.App.4th at p. 819 [concluding that *United Bonding* and *Pugh* are "inapplicable here because they were based on an earlier version of section 1305 which did not specifically address the effect of the defendant's arrest in a foreign nation"].)

Third, the surety asserts that the trial court was wrong to find that there was insufficient proof that defendant fled the country because "[t]here 'is a low threshold of proof' for establishing grounds to . . . vacate [a] forfeiture" (*County of Los Angeles*, *supra*, 236 Cal.App.4th at p. 44; cf. *People v. Financial Casualty & Surety, Inc.*, *supra*, 2 Cal.5th at p. 47 [applying this standard for "good cause" to obtain an extension of the appearance period]), one that requires a surety only to produce "'sufficient evidence to give a rational appearance'" of entitlement to relief (*Resolute*, *supra*, 46 Cal.App.3d at p. 257). We note that other cases seemingly impose a heavier burden, one that requires a surety to "establish" its entitlement to relief "by competent evidence." (*Financial Casualty, supra*, 14 Cal.App.5th at p. 133; *Ramirez, supra*, 64 Cal.App.3d at p. 398.) We need not resolve

this tension because the surety in this case is not entitled to relief even once we accept, as an evidentiary matter, that he voluntary fled the United States.

Lastly, the surety points to the default presumptions that guide judicial interpretation of bail statutes—chief among them, that "the law traditionally disfavors forfeitures of bail." (*Financial Casualty*, *supra*, 14 Cal.App.5th at p. 133, citing *People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906.) Of course, this presumption does not exist in a vacuum, and is to be balanced against the counter-presumption that "when there is a breach of contract, the bond should be enforced." (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657-658.) Here, the surety allowed the defendant to voluntarily flee and, as a consequence, breached its contract with the court. In light of this breach and the other considerations outlined above, the default rule against forfeiture of bail is not controlling.

Accordingly, we conclude that a defendant is not "detained by . . . civil authorities" under subdivisions (d) or (e) of section 1305 when he voluntarily flees the United States and is barred from reentry by virtue of the pending drug charges against him.[4]

---

[4] In light of this holding, we have no occasion to reach the surety's further argument that the trial court was wrong to impose upon the surety the additional requirement that it prove the defendant's inability to obtain relief from the reentry bar or his immunity from extradition.

21

## DISPOSITION

The judgment is affirmed.  The People are entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
CHAVEZ

_____, J.\*
GOODMAN

---

\* Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.