[No. F061690. Fifth Dist. Mar. 1, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ACCREDITED SURETY AND CASUALTY COMPANY, INC., Defendant
and Appellant.

COUNSEL

E. Alan Nunez for Defendant and Appellant.

John P. Doering, County Counsel, and Alice E. Mimms, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**CORNELL, J.**—Accredited Surety and Casualty Company, Inc. (Accredited), was the surety on a $50,000 bail bond issued to secure the release of Todd Russell Sargent from the Stanislaus County jail. The bail was ordered forfeited when Sargent failed to appear in court. During the 180-day exoneration period, Sargent was arrested in Merced County, and the trial court signed an order for his transfer to Stanislaus County. Accredited did not make a motion to vacate the forfeiture and exonerate the bond or to toll the exoneration period. Sargent next appeared in Stanislaus County Superior Court after the exoneration period expired.

After the exoneration period expired, the trial court granted the People's motion for summary judgment on the bond. Accredited argues that the exoneration period was tolled as a matter of law pursuant to Penal Code section 1305, subdivision (e).[1] We disagree, concluding that Accredited was required to make a motion to toll the exoneration period before it expired.

---

[1] All further statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL SUMMARY

On August 15, 2008, a $50,000 bail bond was posted by A.J.'s Bail Bonds to secure the release of Sargent from jail in Stanislaus County. Accreditedwas the surety on the bond. On March 8, 2010, Sargent failed to appear in court and a bench warrant was issued for his arrest. Bail was ordered forfeited. Notice of the forfeiture was mailed on March 9. The exoneration period thus expired 185 days later, on September 10.

On August 17, 2010, the district attorney filed a declaration seeking an order of production for Sargent. In his declaration the district attorney indicated that Sargent was incarcerated in the Merced County jail. The trial court signed an order on August 12, 2010 (the transfer order), to produce Sargent in Stanislaus County for proceedings in this action.

On October 5, 2010, Sargent appeared in court in Stanislaus County, the bench warrant was recalled, bail was reinstated, and Sargent was released on bail.

The county, on behalf of the People, subsequently filed a motion for summary judgment asserting that because Accredited failed to file a motion to vacate the forfeiture within the exoneration period, and the trial court failed to order the forfeiture vacated on its own motion, the trial court lost jurisdiction to vacate the forfeiture when the exoneration period expired on September 10, 2010.

The trial court granted the county's motion. It also set aside the October 5 order that reinstated the bail bond. Summary judgment was entered on the bond.

## DISCUSSION

Relying on section 1305, subdivisions (c)(1), (3) and (e)(1),[2] Accredited argues the trial court erred in granting the People's motion for summary judgment for three reasons. First, Accredited contends that because the trial court was aware, or in the words of the statute, it appeared to the satisfaction of the trial court, that Sargent was in custody in another county, it was required to toll the exoneration period pursuant to the provisions of subdivision (e)(1). Second, because Sargent was in custody in another county, the trial court was required to exonerate the bond pursuant to subdivision

---

[2] All further undesignated references to subdivisions are to subdivisions of section 1305.

(c)(3). Third, when Sargent appeared in court on October 5, 2010, the trial court was required to exonerate the bond pursuant to subdivision (c)(1). Each contention can be disposed of by referring to the statute itself and *People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301 [110 Cal.Rptr.3d 4, 231 P.3d 909] (*Lumbermens Mutual*).)

*Section 1305*

 This statute covers a wide range of issues related to bail bonds. It begins by requiring the trial court to declare the bail forfeited if a defendant fails to appear in court as required under the circumstances stated in the statute. (Subd. (a).)

The clerk of the court is required to mail notice of the forfeiture to the surety and the bail agent if the bond is over $400. (Subd. (b).) If the clerk fails to mail notice of the forfeiture within 30 days, fails to mail the notice to the address on the bond, or fails to mail a copy of the notice to the bail agent, the surety then is released of all obligations on the bond. (*Ibid.*)

Section 1305 next addresses exoneration of the bond in different factual contexts. First, exoneration is required if the defendant appears in court within 180 days from the date the notice of forfeiture was mailed. (Subd. (c)(1).) Upon the defendant's timely appearance, "the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated."[3] (Subd. (c)(1).) Subdivision (c)(1) also provides for exoneration by operation of law if the trial court fails to act on its own motion: "If the court fails to so act on its own motion, then the surety's . . . obligations under the bond shall be immediately vacated and the bond exonerated."

The second situation in which exoneration is required occurs when the defendant is surrendered to custody within the exoneration period, but is released from custody prior to appearing in court. (Subd. (c)(2).) In this situation, "the court shall, on its own motion, direct the order of forfeiture to be vacated and the bond exonerated." (*Ibid.*) Subdivision (c)(2) also provides for exoneration by operation of law if the trial court fails to act on its own motion using language identical to that found in subdivision (c)(1).

---

[3] The surety has 180 days from the date the notice of forfeiture was mailed to exonerate the bond by presenting the defendant in court, a time period we refer to as the exoneration period. Subdivision (b) provides that if the notice of forfeiture is mailed, the exoneration period shall be extended by five days, thus providing the surety with 185 days to produce the defendant in court.

■ Subdivision (c)(3) addresses exoneration when the defendant is arrested or surrendered to custody in another county within the exoneration period. In this third situation, subdivision (c)(3) states that "the court shall vacate the forfeiture and exonerate the bail." Noticeably absent from this subdivision is a provision requiring the trial court to act on its own motion or providing for exoneration by operation of law.[4]

The fourth situation occurs when a defendant is "permanent[ly] disab[led]" during the exoneration period. (Subd. (d).) Permanent disability occurs when it is established, to the satisfaction of the trial court, that the defendant is "deceased or otherwise permanently unable to appear in the court due to illness, insanity, or detention by . . . civil authorities," and "[t]he absence of the defendant is without the connivance of the bail." (Subd. (d)(1), (2).) If the trial court is satisfied the defendant is permanently disabled, "the court shall direct the order of forfeiture to be vacated and the bail . . . exonerated . . . ." (Subd. (d).) Subdivision (d) does not require the trial court to act upon its own motion, nor does it provide for exoneration by operation of law.

The fifth situation where exoneration may be required occurs when the defendant is "beyond the jurisdiction" of the court or state, the People elect not to extradite the defendant, and several conditions are met. (Subds. (f), (g).) Again, there is no requirement that the trial court act upon its own motion, nor is exoneration required by operation of law.

■ Subdivision (e) addresses the situation where the defendant is "temporarily disabled" during the exoneration period. A defendant is temporarily disabled when it appears to the satisfaction of the trial court that the defendant is "temporarily disabled by reason of illness, insanity, or detention by . . . civil authorities," and "[t]he absence of the defendant is without the connivance of the bail." (Subd. (e)(1), (2).) If the trial court is satisfied the defendant is temporarily disabled, it "shall order the tolling of the [exoneration period] . . . during the period of temporary disability." (Subd. (e).) Subdivision (e) does not require the trial court to act on its own motion, nor does it provide for tolling by operation of law.

■ Finally, subdivision (i) provides that a motion filed within the exoneration period may be heard within 30 days of the expiration of the exoneration period, unless the trial court orders the date of the hearing extended upon a showing of good cause. The surety and bail agent are granted authority to make a motion. (*Ibid.*)

With this overview in mind, we turn to Accredited's arguments here. Accredited asserts, correctly we think, that when the trial court signed the

---

[4] Subdivision (c)(4) also provides for reinstatement of the bond in lieu of exoneration if certain conditions are met.

transfer order, it was established to the trial court's satisfaction that Sargent was temporarily disabled within the meaning of subdivision (e). The People point out the trial court did not order the exoneration period tolled when it signed the transfer order. Accredited attempts to overcome this defect by arguing the trial court was required to toll the exoneration period on its own motion and, when it failed to do so, the exoneration period was tolled as a matter of law. We conclude, however, that *Lumbermens Mutual* compels rejection of Accredited's argument.

### Lumbermens Mutual

In *Lumbermens Mutual*, the Bail Hotline Bail Bonds posted bail for Robert Laimbeer after he was arrested for repeatedly failing to appear in Los Angeles County Superior Court on charges of driving with a suspended license and without proof of insurance. Indiana Lumbermens Mutual Insurance Company (Lumbermens) was the surety on the bond. The trial court issued a bench warrant and ordered bail forfeited when Laimbeer failed to appear as required. Notice of the forfeiture was timely mailed to Lumbermens. (*Lumbermens Mutual, supra*, 49 Cal.4th at p. 304.)

The bail agent surrendered Laimbeer to the San Bernardino County Sherriff's Department within the exoneration period. San Bernardino County charged Laimbeer with various drug crimes. The sheriff's department also placed a hold on Laimbeer pursuant to the Los Angeles County warrant. The San Bernardino County charges were resolved and Laimbeer was sent to state prison directly from San Bernardino County. Neither the surety nor any of its agents took any further action to obtain exoneration of the bail bond. After the exoneration period expired, the trial court granted summary judgment on the bail bond posted in the Los Angeles County case. (*Lumbermens Mutual, supra*, 49 Cal.4th at p. 304.)

The Supreme Court began by distinguishing a case where the defendant is returned to the county where the case was filed from a case where the defendant is returned to custody in a county other than where the case was filed. When the defendant is returned to custody in the county where the case was filed, "The court must act on its own motion to reinstate and exonerate the bond, and if it fails to do so exoneration is accomplished by operation of law. [Citation.]" (*Lumbermens Mutual, supra*, 49 Cal.4th at p. 305.)

When the defendant is returned to custody in a different county during the exoneration period, "the statute provides only that 'the court shall vacate the forfeiture and exonerate the bail.' [Citation.] In this circumstance, the court is not directed to act on its own motion, and there is no provision for immediate exoneration if the court does not act." (*Lumbermens Mutual, supra*, 49 Cal.4th

at p. 305, fn. omitted.) The Supreme Court and the parties agreed that in this circumstance "the surety may not rely on operation of law, but must affirmatively seek relief from forfeiture . . . ." (*Ibid.*)

Since the defendant was returned to custody in San Bernardino County, not Los Angeles County where the charges were filed, the surety was required to file a motion to obtain relief pursuant to subdivision (c)(3). The issue was whether the surety must move for relief from forfeiture within the exoneration period or, as the surety argued, whether the motion could be filed within a reasonable time after expiration of the exoneration period.

The Supreme Court observed that a split of authority existed among the Courts of Appeal and found the language of the statute explained the differing opinions.

"It is true as a general rule that the bail statutes are strictly construed to avoid forfeiture. [Citation.] Furthermore, section 1305 is ambiguous, at least to a degree. Section 1305(c)(3) requires the court to grant relief from forfeiture if the defendant is apprehended outside the county within 180 days. The statute does not require the court to act on its own motion, but neither does it specify that the surety must move for relief. No reference is made to the timing provisions of section 1305(i). Section 1305.4, by contrast, specifies that a motion to obtain an extension of the 180-day period 'may be filed and calendared as provided in subdivision (i) of Section 1305.' Section 1305(i) itself contemplates a motion filed within 180 days, but its terms are not expressly mandatory. It simply states that '[a] motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period.'

"While section 1305 is somewhat less than explicit regarding the timing of a motion for relief from forfeiture under subdivision (c)(3), the most natural construction would be to apply the provisions of subdivision (i) contemplating a motion within the 180-day period. Nevertheless, the split between the Courts of Appeal reflects uncertainty over that reading of the statute. We turn to the history of the language now found in section 1305(i) to explore the Legislature's intent with respect to motions for relief under section 1305(c)(3). [Citation.] As discussed below, that history as well as the broader statutory context leave no doubt that motions under section 1305(c)(3) were meant to be filed within the 180-day period, unless the period is extended. The policy disfavoring forfeiture cannot overcome the plainly intended meaning of the statute. Contrary to the reasoning of the [*People v. Ranger Ins. Co.* (2006) 141 Cal.App.4th 867 [46 Cal.Rptr.3d 448]] court and the Court of Appeal below, failure to bring a timely motion results in a statutory bar to relief, not a windfall to the county." (*Lumbermens Mutual, supra*, 49 Cal.4th at p. 308.)

The Supreme Court focused its analysis on the legislative history for subdivision (i), which currently provides that motions must be filed within the exoneration period and heard within 30 days of the expiration of the exoneration period unless extended by the trial court for good cause. The Supreme Court reviewed the evolution of this subdivision, along with the relevant legislative history for the changes before reaching the following conclusion.

"Thus, the Legislature moved the provision allowing a 30-day grace period for hearings from subdivision (c) to subdivision (i) of section 1305, in order to make it available to sureties moving to toll or extend the 180-day period. In the judicial decision prompting this change, the court had reasoned that former subdivision (c)(4) of section 1305 provided a grace period *only* for hearing motions to vacate forfeiture. [Citation.] When the Legislature responded to this ruling in 1999, it did not alter the provisions contemplating a motion filed within the 180-day period. Application of the timing provisions of section 1305(i) was expanded to include motions to toll or extend the 180-day period. It was not contracted to exclude motions to vacate forfeiture and exonerate the bond under section 1305(c)(3).

■ "This legislative history confirms the [*People v. Lexington National Ins. Co.* (2007) 158 Cal.App.4th 370 [69 Cal.Rptr.3d 738]] court's interpretation of the statutory scheme. The evolution of the statute makes it plain that the provisions of section 1305(i) govern motions for relief under section 1305(c)(3). The statutory changes and committee reports discussed above show that from the time the Legislature first contemplated motions 'filed in a timely manner within the 180-day period,' it had motions for relief from forfeiture in mind. And if such motions could be made within any reasonable time after the 180-day period, as Lumbermens would have it, there would have been no reason for the Legislature to provide a 30-day grace period for hearings." (*Lumbermens Mutual, supra*, 49 Cal.4th at p. 312.)

The Supreme Court concluded its opinion by reminding the surety that it was provided ample opportunity to obtain relief from forfeiture by simply following the provisions of the statute.

"Lumbermens and amicus curiae sureties advance a number of policy reasons why a motion for relief under section 1305(c)(3) should be permitted beyond the statutory period. These arguments would be better addressed to the Legislature. We note, in any event, that the existing statutory scheme has been designed to avoid undue hardship for bail sureties. A surety undertakes to guarantee the defendant's timely appearance in court. If the defendant fails

to appear, the surety is contractually obligated to the government in the amount of its bond. [Citation.] Section 1305 allows the surety 180 days, a generous period, to obtain relief by locating the defendant and bringing him or her to custody, or by showing the court that the defendant's absence is due to disability or out-of-state custody. The surety may obtain an extension of the 180-day period upon a timely showing of good cause. [Citation.]

"The surety's contractual obligation on its bond is the same whether the defendant eventually returns to custody in the county where bail was granted or elsewhere. The statutory 180-day period is also the same, and the Legislature has reasonably required that when the defendant is returned to custody outside the county, it is incumbent on the surety to bring a motion for relief from forfeiture. The deadlines and procedures for seeking relief have been tailored to accommodate the interests of the surety, which appropriately bears the burden of compliance with the statutory requirements. [Citation.] Certainly, in this case Lumbermens had a more than adequate opportunity to obtain relief from forfeiture within the statutory period. The nonstatutory 'reasonable time' it urges us to accept is inconsistent with a surety's contractual and statutory obligations." (*Lumbermens Mutual, supra,* 49 Cal.4th at p. 313.)

### Analysis

We acknowledge that the issue in *Lumbermens Mutual* is not identical to the issue here. Nonetheless, the Supreme Court's analysis provides a compelling guide to resolve this issue.

In *Lumbermens Mutual* the Supreme Court agreed with the parties that subdivision (c)(3) required a motion before the trial court was required to act. This concession is understandable since subdivision (c)(3) is worded differently than subdivision (c)(1) and (2). Subdivision (c)(1), (2), and (3) require the trial court to vacate the forfeiture and exonerate the bond if the stated conditions are met. Subdivision (c)(1) and (2), however, contain language requiring the trial court to act on its own motion and also provide that if the trial court fails to do so, the forfeiture is vacated and the bond exonerated by operation of law. Subdivision (c)(3), on the other hand, does not contain any language requiring the trial court to act on its own motion, nor does it contain a provision requiring exoneration by operation of law. We presume the difference in subdivision (c)(3) is because, as the Supreme Court observed,

the trial court in the county where the charges are pending may be unaware the defendant is incarcerated in a different county. (*Lumbermens Mutual, supra,* 49 Cal.4th at pp. 305–306.)

Subdivision (e) contains language identical to subdivision (c)(3) regarding the trial court's obligation to act. Subdivision (e) states the trial court must toll the exoneration period if the defendant is temporarily disabled, but does not require the trial court to act on its own motion. Nor does it provide for tolling by operation of law in the event the trial court fails to act. We presume the Legislature crafted the statute in this manner for the same reasons it crafted subdivision (c)(3) in this manner—the court where the charges are pending may not be aware that a defendant is temporarily disabled within the meaning of the subdivision.

■ Therefore, consistent with *Lumbermens Mutual,* we conclude the surety must make a motion to toll the exoneration period if the defendant is temporarily disabled within the meaning of subdivision (e). Subdivision (c)(1) and (2) unequivocally establish that the Legislature knows how to require the trial court to act on its own motion and how to craft appropriate relief if the trial court fails to act. The Legislature's omission of this language in subdivision (e) precludes us from adding such a requirement. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 252–253 [85 Cal.Rptr.3d 466, 195 P.3d 1049].)

Our conclusion is confirmed by the discussion of the legislative history for subdivision (i) found in *Lumbermens Mutual.* The language permitting a motion filed within the exoneration period to be heard within 30 days after the exoneration period expired was found first in subdivision (c). This language was added to subdivision (c) to permit sureties the opportunity to file a motion and have it heard, even in those cases where the surety did not receive notice of the forfeiture until late in the exoneration period. (*Lumbermens Mutual, supra,* 49 Cal.4th at p. 309.)

In 1999, the Legislature amended section 1305 in response to *County of Los Angeles v. National Automobile & Casualty Ins. Co.* (1998) 67 Cal.App.4th 271 [79 Cal.Rptr.2d 5], which held that subdivision (e) motions to toll the exoneration period *must be filed and heard* before the expiration of the exoneration period. (*Lumbermens Mutual, supra,* 49 Cal.4th at p. 311.) The Legislature's response was to move the language permitting a motion filed within the exoneration period to be heard within 30 days of expiration of the exoneration period to a newly created subdivision (i). Since the change, subdivision (e) motions to toll that are filed within the exoneration period can be heard within 30 days of expiration. (*Lumbermens Mutual,* at p. 312.)

If the Legislature intended to require the exoneration period be tolled as a matter of law when a defendant was temporarily disabled, the 1999 amendment would not have been necessary. Moreover, since the 1999 amendment was in response to a case holding that a motion to toll the exoneration period must be filed and heard within the exoneration period, the Legislature's failure to add a provision requiring tolling by operation of law is conclusive evidence that there was no such intent.

■ For all of these reasons, we conclude Accredited was required to file a motion pursuant to subdivision (e) before the expiration of the exoneration period. Since Accredited failed to do so, the exoneration period expired on September 10, 2010.

*Applicability of subdivision(c)(1)*

Accredited's reliance on subdivision (c)(1) also fails. Sargent did not appear in court until after the exoneration period expired. Once the exoneration period expired, the trial court lost jurisdiction to vacate the forfeiture and exonerate the bond. (*People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 83 [10 Cal.Rptr.3d 93] (*Seneca Insurance*).)

*Applicability of subdivision (c)(3)*

The relief provided by subdivision (c)(3) does not aid Accredited either. *Lumbermens Mutual* established that Accredited was required to make a motion to vacate forfeiture of the bail prior to the expiration of the exoneration period. Accredited may not rely on this subdivision because Accredited failed to file a motion to vacate the forfeiture and exonerate the bond.

The only case cited by Accredited to support its argument is *People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485 [105 Cal.Rptr.3d 469] (*Lexington National*). In this case the trial court ordered bail forfeited when the defendant failed to appear for a scheduled hearing. During the exoneration period, the surety moved to vacate the forfeiture and exonerate the bond, asserting the defendant was in custody in another state. Evidence was presented at the hearing that established the defendant's incarceration. When the trial court indicated it would deny the motion, counsel for the surety made an oral motion to toll the exoneration period. The trial court denied this motion because it was not properly noticed. (*Id.* at pp. 1488–1489.)

The appellate court concluded the trial court erred because the undisputed evidence established the defendant was disabled, either permanently or temporarily, within the meaning of subdivision (d) or (e). Accordingly, the

trial court was required to determine whether the disability was permanent or temporary and then grant the appropriate relief. (*Lexington National, supra*, 181 Cal.App.4th at pp. 1490–1492.)

The appellate court rejected the People's argument that the surety's oral motion to toll the exoneration period was untimely because the written motion cited the relevant facts and section 1305. "As such, section 1305 required the court to consider the relief that might be appropriate in the circumstances . . . ." (*Lexington National, supra*, 181 Cal.App.4th at p. 1493.)

*Lexington National* does not support Accredited's argument because in *Lexington National* a timely motion was made pursuant to section 1305. Here, Accredited never made a motion pursuant to section 1305 during the exoneration period, either written or oral.

Accredited also maintains that *Lexington National* stands for the proposition that relief pursuant to subdivision (e) must be granted as a matter of law. We do not read the case to support such a holding. If the appellate court intended the case to be read that broadly, we would respectfully disagree.

### Vacation or tolling by implication

In another challenge to the judgment, Accredited argues the trial court erred in granting the People's motion for summary judgment because on October 5, 2010, when Sargent appeared in another department, that department issued an order reinstating bail. Accredited asserts, in essence, this order either impliedly vacated the forfeiture or impliedly tolled the exoneration period.

As we have explained, because Accredited failed to make a motion either to toll the exoneration period or to exonerate the bond, the exoneration period expired on September 10, 2010. Once the exoneration period expired, the trial court lost jurisdiction to grant relief from the forfeiture. (*Seneca Insurance, supra*, 116 Cal.App.4th at p. 83.) Therefore, the October 5, 2010, order was void for lack of jurisdiction and properly was recalled. (*People v. Ranger Ins. Co.* (2002) 99 Cal.App.4th 1229, 1234 [122 Cal.Rptr.2d 371], disapproved on other grounds in *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 663 [16 Cal.Rptr.3d 76, 93 P.3d 1020].)

## DISPOSITION

The judgment is affirmed. Costs are awarded to the People.

Wiseman, Acting P. J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2012, S201430.