Filed 4/28/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085358 |
|    Plaintiff and Respondent, | (Super. Ct. No. SCE411972) |
|    v. | |
| THE NORTH RIVER INS. CO. et al., | |
|    Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Danna W. Nicholas and Frank L. Birchak, Judges. Affirmed.

Jefferson T. Stamp, for Defendants and Appellants.

David J. Smith, Acting County Counsel, and Thomas Deak, Supervising Deputy, for the Plaintiff and Respondent.

The North River Insurance Company (North River) was the surety on a $180,000 bail bond issued for the release of defendant Torian Bramlett. After Bramlett failed to appear in court, the trial court declared the bond forfeited. Thereafter, Bramlett was located in the Fort Bend County Jail in Texas and extradited to the San Diego County Jail by the district attorney. The bond was exonerated and North River was ordered to pay the costs of extradition.

On appeal from that order, North River asserts the trial court failed to properly exonerate the bond because Bramlett was not physically present in the courtroom at the time of the order, which it contends was required by Penal Code section 1305, subdivision (c)(1).[1]  Further, North River argues the trial court erred by awarding extradition costs to the district attorney because the court did not have jurisdiction over the bond at the time of the cost award.  The People respond that because Bramlett appeared in court through his counsel in accordance with section 977, the court was required to—and did—exonerate the bond at that time and appropriately awarded extradition costs in favor of the People thereafter.  As we shall explain, we agree with the People and affirm the order.

PROCEDURAL AND FACTUAL BACKGROUND

On April 20, 2022, North River, through its bail agent, Bad Boys Bail Bonds (Bad Boys),[2] posted a $180,000 bond for the release of Bramlett.  On August 3, 2023, Bramlett failed to appear and the court declared the bond forfeited.  The court clerk mailed the notice of forfeiture to North River the same day, setting the expiration of the appearance period for February 4, 2024.  On January 31, 2024, North River filed a motion to extend the appearance period to August 21, 2024, and the court granted the motion on February 23, 2024.

On June 6, 2024, North River sent an email to the San Diego County District Attorney's Office stating Bad Boys had located Bramlett in custody

---

[1]    Subsequent undesignated statutory references are to the Penal Code.

[2]    North River and Bad Boys are hereafter referred to collectively as North River.

at the Fort Bend County Jail in Texas. North River asked the district attorney to advise whether it would seek to extradite Bramlett from Texas. The district attorney responded by email the same day, stating: "Our office will be extraditing this fugitive from Texas. Please see the attached letter." The letter explained the district attorney was in the process of extraditing Bramlett from Texas and, "[u]pon the return of the defendant, the San Diego District Attorney's Office will seek reimbursement from Bad Boy[s] Bail Bonds for the actual costs incurred in extraditing the defendant as a condition to relief from bail forfeiture and exoneration of the bail bond, pursuant to … section 1306[, subdivision] (b)."

On July 9, 2024, two San Diego County Deputy Sheriffs travelled to Texas to retrieve Bramlett. The deputies returned to San Diego County with Bramlett in custody the following day and he was jailed. On July 17, 2024, the People filed a notice of motion and "Motion Re: Exoneration of Bail and Request to Calendar Hearing on Reimbursement of Extradition Costs Pursuant to … Section 1306[, subdivision] (b)." The notice set a hearing date for August 16, 2024. The People asserted Bramlett had been returned to custody in San Diego County and the People did not oppose exoneration of the bond, but requested exoneration be conditioned on the surety and bond agent's payment of extradition costs.

On July 18, 2024, the trial court called Bramlett's case on the record. Bramlett's defense counsel stated, "Mr. Bramlett is in custody. I am appearing 977. This is an appearance on a warrant." The trial court ordered the bond exonerated, conditioned on payment of the district attorney's extradition costs. At the district attorney's request, the court also stated, "I will have that appear on the minute order, that [the bond] is exonerated

3

subject to the District Attorney's costs." The minute order likewise stated the bail bond was exonerated, "subject to DA costs."

On August 15, 2024, Bramlett appeared in court for a trial readiness conference. At the conference, Bramlett waived his appearance for the hearing set the following day for the People's bond motion. On August 16, 2024, the court continued the hearing on the bond motion to October 4, 2024. On August 21, 2024, North River filed a competing motion to vacate bond forfeiture and exonerate the bond under section 1305, subdivision (a). Therein, the surety argued the court lost jurisdiction over the bond because there had been "no declaration of forfeiture when [Bramlett] failed to appear on November 17, 2022 and August 2, 2023." North River asserted that since Bramlett failed to appear "without sufficient excuse, the Court was required to declare a forfeiture of the bond" and its "omission in this regard resulted in a loss of jurisdiction which exonerates the bond."

On September 26, 2024, North River filed an opposition to the district attorney's motion on the bond for extradition costs, asserting that because the court did not address the bond at Bramlett's first appearance in court on August 15, 2024, the bond was exonerated by operation of law on that date and the court did not retain jurisdiction thereafter to order payment of the extradition costs. Further, North River argued that because Bramlett did not appear in person on July 18, 2024, the court's order that day exonerating the bond conditioned on the payment of extradition costs was ineffectual.

The hearing on the competing bond motions was continued to November 22, 2024. Before the hearing, the People filed an opposition to North River's motion. The People asserted defense counsel's appearance for Bramlett under section 977 on July 18, 2024, was sufficient for the court to exonerate the bond and that the court did not lose jurisdiction to award

4

extradition costs thereafter.  On November 18, 2024, the district attorney filed a new motion to recover the specific costs of extradition under section 1306, subdivision (b).  The motion set forth costs of extradition of $7,492.40 and supporting documentation for the expenses.

On November 22, 2024, the trial court granted the People's motions for extradition costs in the amount of $7,492.40 and denied North River's motion to vacate the forfeiture and exonerate the bond.  The court issued an order corresponding to its oral decision and ordering payment of the costs within 60 days pursuant to section 1305.2.  North River filed a timely notice of appeal from the order.

DISCUSSION

As stated, North River asserts that the trial court could not exonerate the bond on July 18, 2024, because Bramlett was not physically present in court.  North River further argues that the bail bond was exonerated by operation of law on August 15, 2024, when Bramlett physically appeared in court for the first time following his extradition from Texas, which it argues removed the trial court's jurisdiction to order the payment of extradition costs.  Alternatively, North River asserts the trial court exceeded its jurisdiction because the costs of extradition were incurred after Bramlett was "returned to 'custody beyond the jurisdiction of the court' pursuant to [section] 1305[, subdivision] (f)."  Finally, North River contends the bond was exonerated under section 1306, subdivision (c), because the court did not enter summary judgment of the forfeiture.

The People respond that the trial court exonerated the bond on July 18, 2024, and appropriately conditioned the exoneration on payment of extradition costs, which the court properly ordered thereafter.

5

We agree with the People that under the plain language of section 1305, subdivision (c)(1), the bond was conditionally exonerated on July 18, 2024, and the costs of extradition were properly awarded on November 22, 2024. We also reject North River's assertion, which relies on an appellate division decision, *People v. Bail Hotline Bail Bonds, Inc.* (2018) 29 Cal.App.5th Supp. 12 (*Bail Hotline*), that the cost award was improper because the costs were incurred after Bramlett was in custody in Texas. Lastly, we hold North River's argument under section 1306, subdivision (c) is meritless.

I

*Legal Standards*

"Although bail bond proceedings occur in connection with criminal prosecutions, they are civil in nature. (*People v. American Contractors Indemnity Co.* [(2004)] 33 Cal.4th [653,] 657.) The object of bail and its forfeiture is to insure the defendant's attendance and his or her obedience to the orders and judgment of the court. (*Ibid.*) The purpose is not to either provide revenue to the state or punish the surety. (*Ibid.*) The law's traditional disfavor of forfeitures extends to forfeiture of bail." (*People v. Accredited Surety & Casualty Co.* (2012) 209 Cal.App.4th 617, 621, disapproved on other grounds by *County of Los Angeles v. Financial Casualty & Surety, Inc.* (2018) 5 Cal.5th 309.)

"The statutory scheme governing bail is found in … section 1268 et seq. When a defendant released on bail fails to appear as required without sufficient excuse, the court must declare the bond forfeited. (§ 1305, subd. (a).) If the defendant appears in court or is returned to custody within 180 days [(known as the appearance period)], the forfeiture must be vacated and the bond exonerated. (§ 1305, subd. (c).)" (*People v. Indiana*

*Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 304 (*Indiana*).) "The 180–day period is extended by five days when notice of forfeiture is required to be mailed, and in that event the period begins to run from the date of mailing." (*Id.* at p. 305, fn. 2.) "Section 1305.4 allows the surety to move for an extension of the 180–day period, upon a showing of good cause." (*Id.* at p. 305, fn. 3.)

"Section 1305 next addresses exoneration of the bond in different factual contexts." (*People v. Accredited Surety & Casualty Co., Inc.* (2012) 203 Cal.App.4th 1490, 1495 (*Accredited Surety*).) Relevant here, under section 1305, subdivision (c)(1), "If the defendant appears either voluntarily or in custody after surrender or arrest in court within [the appearance period], the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated." Further, "[i]f the court fails to so act on its own motion, then the surety's ... obligations under the bond shall be immediately vacated and the bond exonerated.' " (§ 1305, subd. (c)(1).) Finally, "[a]n order vacating the forfeiture and exonerating the bond may be made on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (*Ibid.*)

"[S]ection 1306, subdivision (b), which governs compensation to the government for the costs of extradition, states, '[i]f a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief to compensate *the people* for the costs of returning a defendant to custody pursuant to Section 1305 …'." (*People v. The North River Ins. Co.* (2018) 31 Cal.App.5th 797, 804–805 (*North River*).) The provision further provides, "The amount imposed shall reflect the actual costs of returning the defendant

7

to custody. Failure to act within the required time to make the payment imposed pursuant to this subdivision shall not be the basis for a summary judgment against any or all of the underlying amount of the bail." (§ 1306, subd. (b).)

"We review the denial of a motion to vacate a bond forfeiture and to exonerate the bond for an abuse of discretion." (*North River, supra*, 31 Cal.App.5th at p. 804.) However, " '[w]hen the appellate court is deciding only legal issues …, such as jurisdictional questions and matters of statutory interpretation, the abuse of discretion standard does not apply. [Citation.] When the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review.' " (*Ibid.*)

## II

### *The Bond Was Conditionally Exonerated on July 18, 2024*

As the parties agree, under section 1305, subdivision (c)(1), if Bramlett appeared in court on July 18, 2024, then the court was required to exonerate the bond it had previously forfeited. North River argues that Bramlett did not appear because he was not *physically* present in the courtroom, while the People contend Bramlett did appear through his counsel in accordance with section 977.

Section 977 states in relevant part, "in all cases in which a felony is charged, the accused shall be physically present at the arraignment, at the time of plea, during the preliminary hearing, during those portions of the trial when evidence is taken before the trier of fact, and at the time of the imposition of sentence. The accused shall be physically or remotely present at all other proceedings unless they waive their right to be physically or remotely present, with leave of court and with approval by defendant's counsel." (§ 977, subd. (b)(1).) In addition, the statute provides that "[t]he

8

waiver of a defendant's right to be physically or remotely present may be in writing and filed with the court or, with the court's consent, may be entered personally by the defendant or by the defendant's counsel of record."  (*Id.*, subd. (b)(2).)

As noted, at the hearing on July 18, 2024, Bramlett's counsel indicated that she was appearing on his behalf in accordance with section 977.  The court accepted the waiver of appearance and North River does not dispute that Bramlett was in the custody of the San Diego County Sheriff's Department at that time.  Accordingly, as required by section 1305, subdivision (c)(1), the court exonerated the bond on the condition that North River pay the costs of extradition, which were to be determined at a later time.  (See *Indiana, supra*, 49 Cal.4th at pp. 304–305 ["If the defendant appears in court or is returned to custody within 180 days, the forfeiture must be vacated and the bond exonerated.  (§ 1305, subd. (c).)"]; and *People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1044 ["If the surety produces the defendant in court or shows evidence he or she is otherwise in custody, the trial court must set aside the forfeiture and exonerate the bond."].)  Contrary to North River's assertion, there is no reason to require Bramlett to personally appear at the time the bond is exonerated.  Rather, his appearance by counsel was sufficient to invoke the requirement for the trial court to exonerate the bond subject to reasonable conditions.  (See, e.g., *People v. United States Fire Ins. Co.* (2025) 114 Cal.App.5th 1049, 1052 [because defendant may waive "his personal presence at a trial readiness conference … the trial court was not required to forfeit the bond" when he "appeared through his counsel pursuant to a … section 977 waiver"].)

9

North River asserts that the defendant's physical appearance is required by the "plain language" of the statute, and that Bramlett's appearance by counsel was insufficient to invoke the exoneration requirement of section 1305, subdivision (c)(1). In support of this assertion, North River looks to *People v. Ranger* (2005) 133 Cal.App.4th 1000 (*Ranger II*). In *Ranger II*, after the defendant failed to appear in court on January 14, 2004, the court declared the bond forfeited and issued a warrant for the defendant's arrest. The court issued the notice of the forfeiture the following day. (*Id*. at p. 1001.) The next day, on January 16th, "the clerk of the court recalendared [the defendant's] appearance for January 20, 2004. A note in the court's docket report state[d]: 'Case on calendar at request of the defendant who appeared at the counter.' " (*Ibid*.) After the defendant failed to appear on January 20, 2004, and made no other appearance, the trial court entered "summary judgment against Ranger on August 13, 2004, more than 185 days after the mailing of the notice of forfeiture." (*Ibid*.)

On appeal from the summary judgment, Ranger asserted the defendant's appearance at the clerk's counter was sufficient to trigger the requirement of section 1305, subdivision (c)(1) that the court exonerate the bond. (*Ranger II, supra*, 133 Cal.App.4th at p. 1002.) The Court of Appeal rejected this argument, stating "[a]n appearance in the courthouse vestibule, hallway, restroom, or clerk's office is not an appearance in court. We presume that had the Legislature intended an appearance in the clerk's office to suffice, it would have said so. We have no power to add language to the statute. The defendant's appearance in the clerk's office is simply not sufficient." (*Ibid*.)

North River argues this language required Bramlett to personally appear in court to trigger the bond exoneration requirement. We disagree.

10

Unlike Bramlett, the defendant in *Ranger* was not in custody, did not appear before the judge, and did not appear again in the case after his appearance at the clerk's counter. The situation has no relevance to the case at bar. Here, Bramlett had been taken into custody in Texas, extradited to San Diego, and appeared via his counsel before the trial judge. This was sufficient to trigger the exoneration of forfeiture requirement of section 1305, subdivision (c)(1).

North River also cites *Accredited Surety, supra*, 203 Cal.App.4th 1490 in support of its assertion that Bramlett's appearance by his counsel under section 977 was insufficient to require exoneration of the bond forfeiture. In *Accredited Surety*, the defendant was arrested during the 180-day exoneration period in Merced County. After his arrest, the trial court signed an order transferring the defendant to Stanislaus County where the charges underlying the bond at issue were filed. (*Id*. at p. 1493.) The surety, however, failed to file a motion to exonerate the bond before the expiration of the exoneration period and the court subsequently entered summary judgment on the forfeited bond. (*Ibid*.) On appeal, the surety argued the exoneration period had been tolled as a matter of law, and that reversal of summary judgment and exoneration of the bond was required. (*Id*. at p. 1494.)

The Court of Appeal rejected the argument, concluding the trial court properly entered summary judgment after the forfeiture because the provision of section 1305 that applied to the situation where the defendant is arrested in another county, subdivision (c)(3), did not mandate the court to act on its own motion. Thus, in order to obtain exoneration of the forfeiture,

the surety was required to make a motion.[3]  Because it had failed to do so, the summary judgment was proper.  *Accredited Surety*, which stated (as North River asserts), that the defendant "did not appear in court until after the exoneration period expired," is not relevant to the case at bar.

In sum, we reject North River's assertion that the trial court erred by exonerating the forfeiture on July 18, 2024, and conditioning the exoneration on the payment of extradition costs.  For this reason, we have no reason to reach North River's assertion that the court's subsequent order requiring payment of extradition costs was void because the court lost jurisdiction over the exonerated bond by operation of law thereafter.

## III

### *The Costs of Extradition Were Properly Awarded Under Section 1306(b)*

As discussed, North River, relying on *Bail Hotline*, asserts that the court erred by awarding the costs of extradition because Bramlett was in custody at the time he was extradited.  This argument is without merit.  In *Bail Hotline*, the defendant was taken into custody in Las Vegas, Nevada, and extradited to San Diego.  The appellate division of the superior court held that the People's extradition costs were not recoverable because the defendant was *in custody* in Las Vegas when he was extradited.

The division inexplicably based its decision on section 1305, subdivision (f), which states:  "In all cases where a defendant is in custody

---

[3]  The provision applicable here, section 1305, subdivision (c)(1), "is worded different[ly]" than subdivision (c)(3) and requires the trial court "to vacate the forfeiture and exonerate the bond if the stated conditions are met" and "provide[s] that if the trial court fails to do so, the forfeiture is vacated and the bond exonerated by operation of law." (*Accredited Surety, supra*, 203 Cal.App.4th at p. 1500.)

12

beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (*Bail Hotline, supra*, 29 Cal.App.5th at Supp. 15.) The court held that because "[a] return to 'custody' is clearly not synonymous with 'extradition' as both terms are used separately in subdivision (f) of … section 1305 and 'custody' expressly relates to 'custody beyond the jurisdiction,' " that the People were not entitled to reimbursement for their costs of extradition. (*Ibid.*) This holding is not supported by the statute and is wrong.[4]

---

[4] *Bail Hotline* seemed to rely on *People v. Ranger* (1992) 9 Cal.App.4th 1302 (*Ranger I*). *Ranger I*, however, did not concern the costs of extradition. Rather, the defendant in that case was returned to custody unbeknownst to the bail bond agent and surety after the bond was forfeited. Because the defendant's sentencing hearing was postponed for failure to appear, the trial court conditioned exoneration of the bond on the surety's payment of the costs of housing the defendant for the period between the original and postponed sentencing hearings. When the surety failed to pay the costs, the trial court entered summary judgment on the forfeiture and the surety appealed. The Court of Appeal reversed the summary judgment, holding both that (1) the trial court failed to adhere to the notice requirements for the forfeiture; and (2) the costs of housing the defendant were not properly awarded because section 1306, subdivision (b) allows recovery for the costs of returning the defendant to custody in the county in which the defendant faces charges. (*Id.* at pp. 1305–1306.) The court correctly held that section 1306, subdivision (b), provided no authority for the trial court to award the costs of housing the defendant where she faced charges after she was taken into custody there. (*Id.* at pp. 1308–1309.) Nothing in *Ranger I* supported the appellate division's decision in *Bail Hotline* to deny the People's request for an award of extradition costs.

As the People note, section 1305, subdivision (f) does not apply when the district attorney elects to extradite the defendant. Rather, that provision governs exoneration of the bond if the officials elect *not to* extradite the fugitive defendant. In that case, the court must "vacate the forfeiture and exonerate the bond on terms that are just." (§ 1305, subd. (f).) Here, as discussed, the exoneration of the bond is governed by section 1305, subdivision (c)(1). Under that provision, the trial court properly exonerated the bond after Bramlett was extradited to San Diego County and thereafter awarded the costs of the extradition to the People in accordance with section 1306, subdivision (b).

Further, and contrary to North River's assertion, the bail agent here did not surrender Bramlett to custody in Texas. Rather, North River's agent notified the district attorney that Bramlett was located in the Texas jail and inquired whether the district attorney would elect to extradite Bramlett, which would trigger exoneration under section 1305, subdivision (f). In these circumstances, where the People elected to extradite the defendant, the court properly awarded the People their costs of extradition under the authority of section 1306, subdivision (b).[5]

IV

*The Bond Was Not Exonerated By Section 1306(c)*

North River's final argument is that the bond was "exonerated under [section] 1306[, subdivision] (c) because no summary judgment was ever

---

[5] North River also asserts that the Fifth District's decision in *North River, supra*, 31 Cal.App.5th 797 is not applicable because the bail agent in that case "did not prompt the fugitive defendant's extradition pursuant to [section] 1305[, subdivision] (f)." In *North River*, the trial court ordered payment of extradition costs for the defendant, who was returned from Washington state to California, including the salary and benefits of the law

14

entered for the unpaid extradition costs.  The People respond that this provision does not require summary judgment on an award of extradition costs.

North River's argument lacks merit.  Section 1306, subdivision (c), provides: "If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated."  Here, the court was not required to enter summary judgment before North River appealed the order denying its motion to vacate forfeiture and exonerate the bond, and granting the district attorney's motion for costs of extradition.  For this reason, the provision is inapplicable on its face and did not operate to exonerate the bond entirely.

As the People point out, the extradition costs order is not a forfeiture of the bond.  In this case, the forfeiture was exonerated on July 18, 2024, conditioned on payment of extradition costs and, on November 22, 2024, the

---

enforcement officers for their time to travel to extradite the defendant.  The surety argued on appeal that those costs were not recoverable (and also that the county was not eligible for an award of extradition costs, only "the People").  (*Id*. at p. 801.)  The Fifth District disagreed, holding the costs of extradition recoverable under section 1306, subdivision (b), included "the wages of the officers," which "directly relate[d] to costs County incurred to extradite defendant."  (*Id*. at p. 808.)  The court explained that "[i]n order to extradite defendant, County lost the use of the officers to their regular law enforcement duties.  However, County was still required to pay those officers and facilitate their absence.  The payment of wages and benefits of the officers is a cost directly related to extraditing defendant that it would not have incurred had appellants returned defendant to custody."  (*Id*. at pp. 808–809.)  *North River*, if anything, supports affirmance of the award of extradition costs in this case.

15

court ordered payment of those costs by North River.  Section 1306, subdivision (c), thus did not mandate the imposition of summary judgment based on the court's failure to perform a duty required under section 1306. Accordingly, the provision has no application in this situation and does not operate to exonerate a forfeiture or eliminate North River's obligation to comply with the cost award.

## DISPOSITION

The order is affirmed.  The People shall recover costs on appeal.


McCONNELL, P. J.

WE CONCUR:


DATO, J.


CASTILLO, J.

16